HOVERSTAD et al., Appellants v. THE FIRST NATIONAL BANK AND TRUST COMPANY, a Corporation, Respondents

(74 N.W.2d 48)

(File No. 9500. Opinion filed December 19, 1955)

Rehearing denied February 16, 1956

**Henry C. Mundt** and **Acie W. Matthews,** Sioux Falls, **Bogue & Masten,** Canton, for Plaintiffs and Appellants.

**Jones & Matthews, E. G. Jones,** Sioux Falls, for The

First Nat. Bank & Trust Co., of Sioux Falls, Defendant and Respondent.

**Blaine Simons,** Sioux Falls, for appearing individual Defendants and Respondents.

SMITH, J. Ole Rogn of Minnehaha County, South Dakota, died September 14, 1946. The residuary clause of his will reads, "all the remainder of my estate to all my first cousins." Eventually a residue of $75,313.38 was distributed among twenty-one first cousins of the testator pursuant to a decree for partial distribution and the final decree of the County Court of Minnehaha County, and the executor was discharged. Claiming to be first cousins, or lineal descendants of first cousins of the testator, and entitled to take under his will, the plaintiffs, residents of the Kingdom of Norway, brought this action in the Circuit Court of Minnehaha County against the executor and those first cousins of the testator who shared in the distribution of the residue of his estate. The complaint was assailed by motions, and two judgments of dismissal resulted. By these judgments it was ruled respectively that the complaint failed to state a cause of action against the executor, The First National Bank and Trust Co., on behalf of any of the plaintiffs, and it failed to state a cause of action against any of the defendants on behalf of the plaintiffs we have described as lineal descendants of deceased first cousins of the testator. The appeals by the plaintiffs present these rulings for review.

■ The averments of the complaint, the truth of which we must assume in considering the appeal from the judgment of dismissal dealing with the executor, reveal these facts. The plaintiffs, some of whom are first cousins of Ole Rogn, were not mentioned in the probate proceedings in his estate and received no part of the residue of his estate. They are residents of the Kingdom of Norway and had no knowledge of the death of Ole Rogn, nor of any of the facts revealed in the probate proceedings until long after the entry of the final decree. None of the notices of hearing on the respective petitions of the executor for probate of the will, for a decree of partial distribution, for settlement of its final account, or for final distribution was mailed to or received by the plaintiffs or any of them. The petition of the

executor for probate of the will named eighteen persons as legatees and heirs. The same eighteen persons were named by the executor as the persons entitled to receive partial distribution in his petition dealing with partial distribution.

Thereafter three additional persons appeared in the proceedings, were recognized as first cousins of the testator, and, through a settlement with the originally named eighteen, shared in the partial distribution. The final account and petition for distribution of the executor named the above-described twenty-one persons as entitled to receive the residue, and such a distribution of the residue was decreed. There has been no appeal from the final decree and the executor has been discharged.

The executor distributed the residue to the twenty-one first cousins of the testator as directed by the final decree. Although it knew that Ole Rogn was a native of the Kingdom of Norway, it failed to make a reasonable and diligent attempt to ascertain whether he had first cousins in Norway and failed to give plaintiffs notice of the probate hearings above described. After partial distribution had been made, the executor was informed that Ole Rogn had heirs in Norway. Nevertheless it remained silent during the proceedings looking to final distribution and did not advise the court that the deceased had heirs in Norway. The described conduct of the executor is alleged to have been negligent and fraudulent.

The plaintiffs' prayer for relief includes the following: "1. Judgment that the Defendant bank is a trustee for and on behalf of the Plaintiffs and as such trustee it account to the Plaintiffs for their distributive shares of said estate. 2. Judgment against the Defendant bank for the sum of $34,759.98 as the indebtedness that the Defendant bank owes them for their share of the said estate because of its negligence, fraud or failure to duly exercise its trust duties as to the Plaintiffs or as the amount due because of the overpayment to the other Defendants."

The first question for consideration is whether as against the executor the attack the plaintiffs have made in the circuit court on the final decree of the county court is direct or collateral.

In ruling that the complaint fails to state a cause of action against the executor, the trial court observed: "The executor made distribution of the estate as ordered in the decrees of the County Court. * * * In this action the decrees of the County Court are not questioned directly but as to the executor are attacked collaterally since the purpose of the action is to recover from the executor independently of the decrees although no claim is made that the executor benefited thereby." We share that opinion.

■ In Adamson v. Minnehaha County, 67 S.D. 423, at page 426, 293 N.W. 542, at page 543, this court held,

"* * * An attack is collateral if made upon a judgment in an action that has an independent purpose other than impeaching a judgment, even though impeaching the particular judgment may be essential to the success of the action."

Courts have frequently employed this guide in determining whether a particular attack upon a judgment is direct or collateral. Rowe v. Silbaugh, 96 Wash. 138, 164 P. 923, L.R.A. 1918D, 466; 31 Am.Jur. 204, Judgments, § 611; 49 C.J.S., Judgments, § 408, p. 811; Freeman on Judgments, p. 606, § 306.

■ In so far as the complaint is directed toward the executor we understand plaintiffs' theory to be that an executor is a trustee for the legatees and as such is duty bound to exercise that degree of intelligence and diligence which a man of average ability and ordinary prudence would exercise in like circumstances in searching for those who are entitled to distribution, and that he is also under obligation to disclose to the court such information as he gains to the end that the court may avoid error in distribution; cf. 21 Am.Jur. 498, Executors and Administrators, § 227; Welch v. Flory, 294 Mass. 138, 200 N.E. 900, 106 A.L.R. 813; that the executor not only failed to measure up to its obligation to plaintiffs but represented that certain persons were entitled to distribution and concealed information from the court which contributed to the alleged error in distribution; that by reason of these facts the executor prevented plaintiffs from presenting their claims in the proceedings; and therefore, they are entitled to restitution from the executor in the form

of a judgment equal to their loss. In anticipation of a contention by the executor that the final decree under which it acted shelters it from such a liability to them, the plaintiffs have assailed the decree as void for lack of jurisdiction and for extrinsic fraud. It seems obvious to us that this attack on the final decree is but incidental to the independent purpose of the plaintiffs to recover damages for the executor's alleged conduct, and hence that the attack is collateral.

In asserting that their attack on the final decree is direct and in equity the plaintiffs cite a group of decisions of which Hewitt v. Hewitt, 9 Cir., 17 F.2d 716; Purinton v. Dyson, 8 Cal.2d 322, 65 P.2d 777, 113 A.L.R. 1230; Caldwell v. Taylor, 218 Cal. 471, 23 P.2d 758, 88 A.L.R. 1194; and Sohler v. Sohler, 135 Cal. 323, 67 P. 282, 285, 87 Am.St.Rep. 98, are typical. In each of these cases equitable relief was afforded one who had failed to receive distribution from an estate because he had been prevented from appearing in the proceedings by extrinsic fraud. In granting relief, however, the court treated the decree as valid but charged the person who had received that which in all good conscience belonged to plaintiff as a constructive trustee on the theory of unjust enrichment. In writing of the power of equity to grant relief in such circumstances in Sohler v. Sohler, supra, the California court said,

> "* * * It thus became the principle of the English courts of chancery, while permitting the probate to stand, as having no power to set it aside, to decree that the false legatee or wrongful executor was trustee for the rightful claimant. So here we hold that under our system the utmost that the court in equity could do, if it finds the facts to be as alleged, would be to decree that the defendant Paul Reuss holds title as trustee of the minor plaintiffs, * * *. This we believe to be the limit of the power in equity in dealing with the matter, and it is in accordance with the principle adopted by the English courts, expressed by Pomeroy as follows: 'Where probate is obtained by fraud, equity may declare the executor or other person deriving title under it a trustee for the party defrauded.'"

These cases, in our opinion, offer no support for the contention that in the alleged circumstances equity will

ignore the decree of the county court and lay hold of an executor who was bound to execute that decree and has received nothing from the estate, and require him to respond in money damages to plaintiffs by way of restitution. The limit of the power of equity in such a situation was indicated by the court in Lathan v. Edwards, 5 Cir., 121 F.2d 183, 185. The action was against an administratrix named Julia Lathan who had distributed a fund to herself and three other persons. The plaintiff claimed relief in equity on the ground of extrinsic fraud. The court said,

"Julia Lathan did not personally receive the entire estate of Will Lathan and she is protected in her capacity of administratrix by the judgment of the state court which the District Court was without jurisdiction to annul."

We hold that as against the executor the complaint attacks the decree of the county court collaterally.

■ The next contention is that under the decisions of this court the final decree may be attacked on the ground of fraud in a collateral proceeding. Our attention is directed to expressions of this court such as the following, appearing in the case of In re ReQua's Estate, 70 S.D. 470, at page 474, 18 N.W.2d 791, at page 793, "Although a county court is one of limited jurisdiction, its adjudications within the scope of its jurisdiction are of equal rank with judgments of courts of general jurisdiction, impart the same degree of verity and are not subject to collateral attack in the absence of fraud." Cf. Broast v. Interstate Surety Co., 48 S.D. 581, at page 593, 205 N.W. 717, at page 721. Such statements have reference to fraud which goes to the jurisdiction of the court. The true rule is stated in 49 C.J.S., Judgments, § 434, p. 859, as follows: "A judgment may be collaterally attacked on the ground of fraud where the fraud goes to the jurisdiction of the court." Cf. 31 Am.Jur. 191, Judgments, § 595.

In dealing with attempts to impeach judgments a court is confronted with conflicting policies. On the one hand, there is the need that litigation come to an end and that confidence be maintained in the finality and integrity of the judgments of our courts. On the other hand, there is the

imperative demand that justice be done. A course must be charted with both of these social ends in view.· It is our conclusion that the one policy requires us to limit collateral attack to those vices which are destructive of validity; the ends of justice will be adequately served by the several direct remedies available to a litigant. Cf. Restatement, Judgments, § 11. Thus we are brought to the contention of plaintiffs that the decree of the county court is void as to them because the court lacked jurisdiction to make distribution.

The paragraph of the statute under which this contention is made reads,

> "If the account mentioned in the preceding paragraph be for a final settlement and a petition for the distribution of the estate be filed with said account, the notice of the settlement must state those facts, which notice must be given by posting a copy thereof in the county in which said petition is filed at least ten days prior to the hearing of said petition, and copies of such notice and of such final account shall be mailed to the heirs, devisees, and legatees at their last known post office addresses at least ten days prior to the date set for such hearing." SDC 35.1609.

The contention is twofold in theory: (1) The statute requires mailing to the plaintiff legatees because with reasonable diligence their names and addresses would have been known, and (2) If they were unknown legatees, posting as provided by the statute did not constitute due process.

 Accepting the view that a final decree of a county court may be attacked in a collateral proceeding for lack of jurisdiction and assuming that under Johnson v. Bruflat, 45 S.D. 200, 186 N.W. 877 (and cf. Restatement, Judgments, § 12), extrinsic evidence is admissible to establish such invalidity, we are of the opinion it does not follow that plaintiffs' complaint states a cause of action which warrants the exercise of the powers of the circuit court. With the filing of the petition for probate of the will of Ole Rogn in the county court, jurisdiction of the estate attached. If, as plaintiffs maintain, that court was without jurisdiction to enter described decree and discharge the executor, it

retains jurisdiction. It is settled that the circuit court will not assume jurisdiction of an estate until exceptional circumstances are shown indicating that the county court is incompetent to afford adequate relief. Howe v. Larson, 68 S.D. 203, 299 N.W. 876, and cases cited therein. To require an accounting from an executor is an ordinary function of the county court. We discern no circumstances calling for the exercise of the power of the circuit court if the allegations of plaintiffs' complaint are established. Therefore, we hold that the complaint, in so far as it deals with the executor, does not invoke the powers of the circuit court.

■ However, we are of the view that plaintiffs should not be foreclosed from testing their theories in a proper forum. Cf. Paul v. Paul, 41 S.D. 383, 170 N.W. 658; Moore v. Connecticut General Life Ins. Co., 71 S.D. 512, 26 N.W.2d 691. Therefore, the order of dismissal of the action in favor of the executor is modified and will be without prejudice.

There remains the appeal of the plaintiffs we have described as lineal descendants of the deceased first cousins of Ole Rogn from the ruling of the trial court that as to them, the complaint fails to state a cause of action against any of the defendants.

The fact is that these plaintiffs are lineal descendants of first cousins of Ole Rogn who were dead when the will in question was made.

Whether our anti-lapse statute, SDC 56.0232, is invoked by the undisputed facts, is the issue. The statute reads:

"If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails unless an intention appears to substitute another in his place; except that when any property is devised or bequeathed to any child or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, or is dead at the time the will is executed but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner the devisee or legatee would have done had he survived the testator."

In 57 Am.Jur. 834, Wills, § 1262, it is written:

"Where property is given to legatees who are

> not named but are referred to in general terms, and it was plain at the time the will was made that the persons who would fall within the group designation used, at the time the gift is to take effect, might in the meantime fluctuate in number, the gift must be regarded as one to a class, unless it otherwise appears that the testator had in mind particular individuals as the object of his bounty."

Cf. Annotation 75 A.L.R. 773. It will be recalled that the words of this testator who wrote his own will are "all the remainder of my estate to all my first cousins". The parties concede that the testator intended to make a gift to a class. The question we must decide therefore is whether the quoted anti-lapse statute is operative upon a gift to a class such as we have under consideration. If the statute is operative its express terms substitute these appealing plaintiffs for the first cousins of Ole Rogn who were dead when the will was executed.

In Page on Wills, Lifetime Ed., § 1062, appears an explanation of the conflict of authority on this question reading as follows:

> "Do statutes of this sort apply to gifts to a class? Upon this question there has been conflict of authority, which is caused, to a large extent, by conflicting views as to the purpose of the legislature in enacting such statutes; and as to the general theory which underlies them. Are such statutes intended to protect the issue of members who die before the testator, if within the designated relationship, or are they only intended to prevent lapse where the gift would have failed at common law? If the former theory is adopted, such statutes should apply to gifts to a class; since the issue of the beneficiary who died before testator need protection as much in this case as in the case of a gift to an individual. If the latter theory is correct, the statute does not apply to a gift to a class; since such gift would not have lapsed by reason of the death of one of the members of the class before testator died, as well as any members of the class surviving testator."

And the author further states:

> "By the weight of authority, however, it is held that such statutes are intended to protect the

issue of a beneficiary, who is within the designated relationship to testator, and who would have taken under the will if he had survived testator whether the case was a technical case of lapse of common law or not; * * *. Such statutes are, therefore, held to apply to a gift to a class; * * *"

The following authorities support that view: In re Steidl's Estate, 89 Cal.App.2d 488, 201 P.2d 58; Clifford v. Cronin, 97 Conn. 434, 117 A. 489; Rudolph v. Rudolph, 207 Ill. 266, 69 N.E. 834, 99 Am.St.Rep. 211; In re Nicholson's Will, 115 Iowa 493, 88 N.W. 1064; Bray v. Pullen, 84 Me. 185, 24 A. 811; Galloupe v. Blake, 248 Mass. 196, 142 N.E. 818; Taylor v. Albree, 317 Mass. 57, 56 N.E.2d 904; Strong v. Smith, 84 Mich. 567, 48 N.W. 183; Murphy v. Enright, Mo., 264 S.W. 811; In re Kittson's Estate, 177 Minn. 469, 225 N.W. 439; Edgerly v. Barker, 66 N.H. 434, 31 A. 900, 28 L.R.A. 328; In re Mott's Estate, 137 Misc. 99, 244 N.Y.S. 187; Woolley v. Paxson, 46 Ohio St. 307, 24 N.E. 599; Moore v. Dimond, 5 R.I. 121; Jones v. Hunt, 96 Tenn. 369, 34 S.W. 693; Burch v. McMillin, Tex.Civ.App., 15 S.W.2d 86. Cf. 69 C.J. 1065, Wills, § 2293, and Annotation, 3 A.L.R. 1686.

In adopting the position that these statutes apply to a limitation in favor of a class, the authors of Restatement, Property, reason as follows:

"A statutory movement to minimize the hardships of lapse began early in the nineteenth century. These statutes were not, in terms, applicable to a limitation in favor of a class. They provided merely that, under stated circumstances, when a 'devisee' died before the testator the descendants of such devisee should be substituted as the takers of what the testator had attempted to give their ancestor. Technically a limitation in favor of a class did not attempt to make a gift to any of the described group who predeceased the testator. Actually, the remedial purpose of these statutes made it reasonable to apply them equally to attempted gifts in favor of specified persons and to an attempted gift couched in the form of a class gift. Thus the rule stated in this section embodies a liberal construction of these statutes, applying them to certain situations which can arise under limitations in favor of a class as well as to those limitations in favor of individuals which are clearly within their

terms. Thus their remedial purposes are more completely effectuated."

Restatement, Property, Parts 3 & 4, P. 1623, comment a, § 298.

A leading case is that of Woolley v. Paxson, 46 Ohio St. 307, 24 N.E. 599, 600. The reasoning of its author is illuminating. He writes,

"It was upon this ground that a devise of one by name, who predeceased the testator, was held to lapse. The fact that in the latter case the extinguished or lapsed legacy went to the residuary legatees, or to the heir where there were no such legatees, while in the case of death of a member of a class it went to the survivors, supplies no reason for excluding the application of the statute where the devise is to a class. It was not because the extinguished legacy or devise was disposed of by the law in one way rather than another that the statute was adopted, but because it did not go to the issue of the deceased devisee, as the testator, in all probability, supposed it would. In other words, it was not designed to prevent the failure of a legacy by the death of the legatee before the testator,— that were impossible,—but to make a new disposition by law of such legacy, where the testator had himself failed to do so, in anticipation of the possible death of any one of the chosen objects of his bounty before himself, where such object was a child or other relative of his."

It seems obvious that the statutory exception under consideration was motivated by a purpose to protect the kindred of the testator and by a belief that a more fair and equitable result would be assured if a defeated legacy were disposed of by law to the lineal descendants of the legatees or devisees selected by the testator. Therefore under familiar principles, which require us to so construe an ambiguous statute as to advance the legislative purpose, we feel bound to hold that the measure under consideration applies to a limitation to a class.

Needless to say, this statute will not control if the will of the testator expresses a different intention. Parker State Bank v. Fields, 69 S.D. 605, 13 N.W.2d 302. A different intention is not indicated by the complaint.

The judgment of the trial court dismissing the complaint as to The First National Bank and Trust Co. is modified to read without prejudice, and its judgment dismissing the complaint as to named plaintiffs is reversed.

All the Judges concur.