100 N.W.2d 399 (1960)
In the Matter of the ESTATE of Dellephine BURNS, Deceased.
J. E. WELLS, Jr., et al., Appellants,
v.
F. G. WEDEHASE, as Administrator, et al., Respondents.
Nos. 9750-r, 9751-a.
Supreme Court of South Dakota.
January 6, 1960.
*401 Woods, Fuller, Shultz & Smith and H. L. Fuller, Sioux Falls, for appellants, Nieman & Bosard, Minneapolis, Minn., of counsel.
Fellows, Fellows & Tinan, Morgan & Fuller, Mitchell, Martens, Goldsmith & May, Pierre, for respondents.
RENTTO, Judge.
In this probate matter a petition was filed asking a construction of paragraphs eighth and twentieth of the will. Before this was decided by the county court a petition for partial distribution was heard. Both matters were decided on February 4, 1958. These determinations were then appealed to the circuit court which affirmed the decree of partial distribution. It also affirmed the other decree in so far as it construed paragraph twentieth of the will but remanded it with directions as to paragraph eighth. A common group of heirs, five in number, prosecutes these appeals from both judgments of the circuit court.
The construction of paragraph twentieth presents the question of whether our statute against lapses is operative under the circumstances here presented. Both courts held that it was not. The consideration of paragraph eighth involves the question of whether shares of stock acquired after execution of the will, some by purchase and others as stock dividends, are included within the bequest of this paragraph. The county court concluded that all of these shares, with two exceptions, should be distributed under this provision. The circuit court determined that all of them passed under it. The appeal from the decree of partial distribution presents the question of whether the federal estate tax should be apportioned against all of the assets of the estate or should be borne solely by the residuary estate. The lower courts adopted the latter view.
In the twentieth paragraph of her will executed on May 19, 1949, the testatrix provided:
"All the rest and residue of my property, of whatsoever kind and nature, and wheresoever situated, I hereby give, devise and bequeath unto Clara Davison, Fannie Wells and Ida Hust, share and share alike; and in case of the death of any of said persons, that said rest and residue shall be divided *402 equally between the survivors of said persons;"
The three beneficiaries named are sisters of the decedent and all predeceased her. Ida Hust died on February 22, 1951 at the age of 86, leaving no lineal descendants. Fannie Wells died in August 1951 at the age of 90, leaving lineal descendants, the appellants herein. Clara Davison died in June 1952 at the age of 89, leaving no lineal descendants. The testatrix died on April 6, 1958 at the age of 87. The courts below held that the residuary estate lapsed and that as to such property the decedent died intestate. Accordingly, it was ordered distributed to her heirs at law. They are 21 in number, including these five appellants.
The appellants, the lineal descendants of Fannie Wells, claim that our anti-lapse statute governs the distribution of the residuary estate and by virtue of its provisions they are entitled to take such property. That section is SDC 56.0232 and provides:
"If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails unless an intention appears to substitute another in his place; except that when any property is devised or bequeathed to any child or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, or is dead at the time the will is executed but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner the devisee or legatee would have done had he survived the testator."
The county and circuit courts were of the view that the testatrix by using words of survivorship indicated an intention that the beneficiaries therein named would not take under this paragraph unless they survived her.
By its terms the statute does not affect a testamentary disposition if an intention appears to substitute another in place of the deceased devisee or legatee. This intent must be the testator's intent at the time he executed his will. A testator has the right to select the objects of his bounty and if he has selected a substitutionary beneficiary to take the property given to the beneficiary who predeceased him, then the statute cannot be invoked. It is equally obvious that if the testator uses words indicating an intention that the named beneficiary shall take the gift only if he outlives the testator, there is nothing upon which the statute can operate.
In Hoverstad v. First National Bank and Trust Co., 76 S.D. 119, at page 130, 74 N.W.2d 48, at page 55, 56 A.L.R.2d 938, it is written that this statute "was motivated by a purpose to protect the kindred of the testator and by a belief that a more fair and equitable result would be assured if a defeated legacy were disposed of by law to the lineal descendants of the legatees or devisees selected by the testator." This purpose and belief must be kept in mind in determining whether the statute applies to a given situation. Also it is the policy of the law to prefer that construction of a will which will prevent intestacy, either partial or total. See SDC 56.0310. When a testator makes provision for residuary devisees and legatees he manifests a desire that none of his possessions be distributed as intestate property. Schroeder v. Benz, 9 Ill.2d 589, 138 N.E.2d 496.
It is generally presumed that the testator made his will in view of the statute and intended to have the statute apply unless the contrary intention appears. If that does not appear the statute is a part of the will. It was intended to supplement the will and not to defeat it. Union Trust Co. v. Richardson, 70 R.I. 151, 37 A.2d 777. The intent to substitute another in place of the deceased beneficiary must be clear and if there is doubt concerning the testator's intent to do so it must be resolved in favor of the operation of the statute.
An intention that the statute is not to apply is also revealed when the testator *403 uses words indicating an intention that the named beneficiary shall take the gift only if he outlives the testator. If the gift is so conditioned there is nothing upon which the statute can operate. The intent that the gift is effective only if the recipient outlives the testators, must also be clear before the statute is ousted, and if this is doubtful, it too must be resolved in favor of the operation of the statute.
Whether a gift to two or more beneficiaries or the survivor of them shows an intention to exclude the operation of the statute, if they all die before the testator, is a question upon which there is a division of authority. Page on Wills, Lifetime Ed., § 1423. The author of the annotation in 92 A.L.R. 846, at page 858 says:
"There appears to be some difference of opinion as to what disposition should be made of a legacy given to several legatees or the survivor of them where all of the legatees predecease the testator."
It seems to us that hard and fast rules cannot be applied in this field because so many of the decisions obviously are the result of seemingly insignificant differences of language in the cases under consideration. Annotation 92 A.L.R. 846; 63 A.L.R.2d 1172; 96 C.J.S. Wills § 1217; 57 Am.Jur., Wills, § 1437.
Professor Philip Mecham in an article entitled Problems Under Anti-Lapse Statutes appearing in Vol. 19, Iowa L.Rev. p. 1 at p. 10 has this to say concerning the situation we are considering:
"It can be argued that testator contemplated non-survival and made, not a substitutional gift to issue or the like, but a gift over to the other legatee; this is inconsistent with the intention that the issue of either legatee should take. On the other hand it can be suggested that the survivorship requirement is applicable only in the case where one survives; that the testator did not contemplate or provide for the case where neither survives, and that accordingly the statute is left to operate. This has been held in several cases. Since on this view the provision about survivorship virtually becomes nugatory in the event that has happened, it should make no difference which of the legatees died first."
Under the circumstances here existing we are inclined to accept the latter position. Galloupe v. Blake, 248 Mass. 196, 142 N.E. 818 is cited in support of this view.
The survivorship clause in this paragraph by its terms does not contemplate the death of all three sisters before the testatrix. It says merely, "and in case of the death of any of said persons, that said rest and residue shall be divided equally between the survivors of said persons;". There can be survivors to take the property only if the beneficiaries who predecease the testatrix are less than all of them. Nothing is said as to who shall take if they all predecease her. Probably this happening did not occur to her when the will was being prepared. While we appreciate respondent's position and able argument we are unable to hold that it clearly appears that the testatrix intended the statute was not to apply. Had she intended the anti-lapse statute not to apply she could have very easily shown such contrary intent. Benz v. Paulson, 246 Iowa 1005, 70 N.W.2d 570. It is not for us to do that for her. Accordingly, the distribution under this paragraph of the will must be to the lineal descendants of Fannie Wells.
Paragraph eighth of the will, the other matter involved in this portion of the appeal, is as follows:
"I give, devise and bequeath all Fully Administered stock, George Putnam Fund, and General Bonds (group securities) to Fannie Nobis, my niece, of Eau Claire, Wisconsin;"
At the time the will was executed she owned 100 General Bond shares, 500 Fully Administered shares and 125 shares of George Putnam Fund. After the execution of the *404 will she acquired 60 shares Fully Administered Fund and 125 shares George Putnam Fund as dividends on stock of the same name owned by her when she executed her will. During this period she also acquired 100 Low Priced shares and 100 shares George Putnam Fund, apparently by purchase, and on these she received respectively, as stock dividends, 15 shares Capital Growth Fund and 100 shares George Putnam Fund.
As a result of these acquisitions at the time of her death she owned:
 100 General Bond shares
 560 Fully Administered shares
 450 shares George Putnam Fund
 100 Low Priced shares
 15 shares Capital Growth Fund
The certificates of Low Priced shares and Capital Growth Fund contain this statement: "A class of the Capital Growth Stock of Group Securities, Inc.," which statement is also on the certificates of General Bond shares and Fully Administered Fund. The county court determined that all of these stocks, except the last two, passed under paragraph eighth and the circuit court determined that all of them did.
Appellants contend that of the securities described only those owned by the testatrix at the time she executed her will pass under this paragraph. Counsel in presenting this matter have directed us to numerous decisions concerned with the distribution of after-acquired shares issued as stock dividends or on split up of existing shares. See Annotation 172 A.L.R. 364. We have not found these helpful. They involve specific bequests while we are here dealing with a bequest which under our statutory definition is general. SDC 56.0401(1) and (5). While the petition which raised this question asked for a construction of this paragraph we think it rather a problem of interpretation.
These are two different processes. In Atkinson on Wills, 2d Ed., p. 809, they are thus distinguished: "While the difference is not always recognized, it is helpful to draw a distinction between interpretation and construction. The former is the process of discovering the meaning or intention of the testator from permissible data. Construction, in its narrow sense, consists of assigning meaning to the instrument when the testator's intention cannot be fully ascertained from proper sources. If interpretation answers all questions relative to disposition of the testator's property, there is no need of embarking upon the field of construction. In other words, construction is necessary only when interpretation fails." This court put it more tersely In re Barrett's Estate, 70 S.D. 475, at page 480, 18 N.W.2d 787, at page 790, when it said, "Before resort may be had to rules of constructional preference, it must appear that a testator has left room for doubt as to his intention." See also Briggs v. Briggs, 73 S.D. 500, 45 N.W.2d 62.
At the common law a will was regarded as speaking of the date of its execution with respect to real property and as of the date of testator's death with respect to personal property. Page on Wills, supra, Cumulative Supplement 1941-1954, § 938. See also Annotation 75 A.L.R. 474; 57 Am.Jur., Wills, § 1210; 96 C.J.S. Wills § 755. In this state the common-law rule has been changed as to real property, SDC 56.0237, but not as to personalty, except that it has been made statutory where the bequest is of all the testator's personal property. SDC 56.0315. Accordingly, under our law personal property acquired by the testator after the execution of his will passes thereunder, unless a contrary intention clearly appears. There is nothing here to indicate that after-acquired shares of stock of the type described in this paragraph of the will were not to pass thereunder.
In our view the provision in question gave to the legatee therein named all of the General Bond shares, Fully Administered shares, and shares in the George Putnam Fund owned by the testatrix at the time of her death. This we think is clear. The situation as to the stock of Low Priced *405 shares and Capital Growth Fund is different. Group Securities, Inc., and George Putnam Fund are both investment funds. The latter is a single fund while Group Securities operates 23 separate investment funds. The shares that it issues in each of these funds are designated classes of the Capital Growth Stock of Group Securities, Inc. In this estate there are four of these classesGeneral Bond shares, Fully Administered shares, Low Priced shares and Capital Growth Fund.
As noted the paragraph in question passes all Fully Administered stock, George Putnam Fund and General Bonds. Why she used the descriptive phrase "group securities" in the manner here appearing is difficult to know. Had she intended by this bequest to give all "classes" of stock that she owned at her death in Group Securities, Inc., it was unnecessary for her to mention Fully Administered Stock and General Bonds because these are both classes of its stock. We think the phrase "group securities" in this provision of the will is merely descriptive of General Bonds. Possibly it was thought that without such description it could be claimed that the term General Bonds included bonds generally. Also it is significant that when the will was made she didn't have any Low Priced shares or shares in the Capital Growth Fund. She acquired the Low Priced shares by subsequent purchase and the shares of Capital Growth Fund as a stock dividend thereon. There is nothing to indicate that the testatrix intended the legatee to get them under this bequest.
There remains the question raised by the judgment entered on the petition for partial distribution. Appellants contended below, as they do here, that the federal estate tax should be equitably apportioned among the legatees against all the assets of the estate. The others urge the position that such tax is properly a charge against and payable from the residue of the estate. The courts below adopted the latter view. On this problem the authorities are divided. Gelin v. Gelin, 229 Minn. 516, 40 N.W.2d 342; Annotation 37 A.L.R.2d 169. It is probably safe to say, without actually classifying all of the cases, that the majority hold that the burden of the estate tax ultimately falls upon the residuary estate unless the will or a state statute provides otherwise.
The will does not mention the payment of federal estate tax and South Dakota has no statute providing for its proration. The briefs indicate that the prevailing practice in this state is to pay such tax out of the residue unless the will specifies otherwise. No useful purpose would be served by reviewing the merits and demerits of the respective rules. This has been well done in the adjudicated cases. It seems to us that if the rule of prorating these taxes is put into effect in this state it should be done by the legislature and not the courts. Knowles v. National Bank of Detroit, 345 Mich. 671, 76 N.W.2d 813. Accordingly, the judgment entered on the petition for construction, case No. 9750, is reversed; and the judgment on the petition for partial distribution, case No. 9751, is affirmed.
All the Judges concur.