278 N.W.2d 171 (1979)
In the Matter of the ESTATE of Mary Greifenhagen KING, a/k/a Mary G. King, Deceased.
DAKOTA MIDLAND HOSPITAL and Shriners Hospital far Crippled Children, Twin Cities Unit, Minneapolis, Minnesota, Appellants,
v.
George PAGEL, Executor and Respondent, and
Robert Knickrehm, Leonard Olson, Carl Nilsson, Don Mertz, William Tewksbury, Marvin Hausvik, Berthold Lenling, Marvin Erdman, Maurice Samuelson, Louis Pesall, Marie Ellingson, and Donald Ellingson, Respondents.
Nos. 12345, 12347.
Supreme Court of South Dakota.
April 19, 1979.
Rehearing Denied May 25, 1979.
Kennith L. Gosch of Bantz & Gosch, Aberdeen, for appellant Dakota Midland Hospital.
James A. Wyly of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for appellant Shriners Hospital for Crippled Children.
Raymond M. Schutz of Siegel, Barnett, Schutz, O'Keefe, Jewett & King, Aberdeen, for executor and respondent, George Pagel.
Richard H. Battey of Gallagher & Battey, Redfield, for respondents Robert Knickrehm, Leonard Olson, Carl Nilsson, Don Mertz, William Tewksbury, Marvin Hausvik, Berthold Lenling, Marvin Erdman, Maurice Samuelson, Louis Pesall, Marie Ellingson, and Donald Ellingson.
*172 WOLLMAN, Chief Justice.
Mary King, the decedent, died January 21, 1975. A petition for probate of her will was filed in circuit court on January 22, 1975. On December 6, 1976, the executor, George Pagel, petitioned the court for authority to mortgage or sell property from the estate in order to pay the remaining federal taxes, and for a determination whether the taxes were to be paid from the share of the estate going to the charities, appellants hereinDakota Midland Hospital and Shriners Hospital for Crippled Children, Twin Cities Unit, Minneapolis, Minnesota or whether the taxes should be apportioned between the charities and other devisees. The trial court rendered a memorandum opinion directing the executor to take those steps necessary to raise the funds to pay the taxes and to pay all taxes from the residuary estate, in other words that portion going to the charities. Findings of fact, conclusions of law and judgment were duly entered.
On April 4, 1973, testatrix executed her will and a codicil and on that same day gave real and personal property to George Pagel with a gift tax value of $293,650. These transfers were noted on the gift tax return as transfers without value and were included in the estate at a value of only $39,500, representing the value of a life estate retained by testatrix. As a result of an Internal Revenue Service audit of the estate tax return, it was determined that additional taxes were owed; an additional gift tax of $14,874.24 on the April 4, 1973, gift to Pagel; and an additional estate tax of $166,433.57 was assessed because the gift to Pagel was considered a gift causa mortis and should have been included in the estate for tax purposes at its value on the date of death.
In her will testatrix granted to the tenants of her farmland an option to purchase approximately twenty-two quarters of land at a price of $150 per acre. The difference between this price and the fair market value of the land was considered a gift and constitutes the remaining tax burden on the estate.
The principal question in this case is whether SDCL 29-7-1 and 29-7-2[1] relating to the apportionment of tax burden among the beneficiaries of an estate should be applied to the taxes involved here.[2] SDCL 29-7-1 requires that the taxes be equitably apportioned among those persons interested in the estate unless otherwise directed by the decedent's will.
Article I of decedent's will provides:
First, I direct my executor to pay out of the principal or income, or both, of the property coming into his possession as executor, all debts allowed in the course of administration, expenses of last illness and funeral, administration expenses and all estate, inheritance, legacy and succession taxes levied upon or in connection with any property or interest either passing under this Will or treated as a part of my estate for the purpose of any such tax or subjected, for any reason, to any such tax.
*173 The sole issue on appeal is whether the language of Article I provides sufficient direction to escape the operation of the statute.[3]
All parties agree that George Pagel was not to pay any taxes on the gifts that were transferred to him de hors the will. Appellants contend that the language concerning the duty of the tenants to pay a portion of the taxes of the estate is ambiguous and must be construed, citing Matter of Estate of Nelson, S.D., 250 N.W.2d 286. They urge application of the rules found in In re Burns' Estate, 78 S.D. 223, 100 N.W.2d 399. Respondents assert that there is no need for construction of the will but rather mere interpretation. Matter of Estate of Nelson, supra, notes that distinction, stating:
If through interpretation of the writing the intent is clear from the words used, in light of the surrounding circumstances, that intent controls. If after the process of interpretation doubt remains as to the decedent's intent, the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction. [footnote omitted] 250 N.W.2d at 288.
The trial court found that the language of Article I discloses decedent's intention that her estate bear the burden of taxation. We agree.
It appears that although this problem has not previously been addressed by this court, other courts have had occasion to rule upon the efficacy of tax apportionment clauses. In Johnson v. Hall, 283 Md. 644, 392 A.2d 1103, the Maryland Court of Appeals grappled at length with this problem. In that case, testatrix left an estate in excess of one-half million dollars. She made a number of specific bequests to friends and relatives, leaving the residue in trust for the benefit of her mentally ill son. The tax clause in that will provided:
FIRST: I direct that all lawful debts I owe at the time of my death, including funeral and administration expenses and the expense of my last illness (but not including debts secured by mortgages on real property, except matured obligations as they fall due), and all estate and inheritance taxes, be paid as soon after my death as can lawfully and conveniently be done. (emphasis supplied by the Maryland Court) 283 Md. at 650, 392 A.2d at 1107.
The Prince George's County Orphans' Court concluded that the taxes should be apportioned among the beneficiaries; however, the Maryland Court of Special Appeals reversed that judgment and placed the entire tax burden upon the residuary legatee. Hall v. Johnson, 38 Md.App. 589, 382 A.2d 332. The Maryland Court of Appeals reversed the Court of Special Appeals and directed that the judgment of the Orphans' Court be reinstated. The Maryland Court of Appeals acknowledged that of the courts faced with this issue under apportionment statutes similar to theirsand oursthe vast majority conclude that such a tax clause operates to shift the tax burden.[4] *174 The most common principle among these cases is that where taxes are grouped along with other expenses of administration of an estate the tax burden is shifted to the fund required by statute to pay estate expenses. In most cases, these expenses are a charge against the general estate and hence have the practical effect of reducing the residuary estate. Starr v. Watrous, 116 Conn. 448, 165 A. 459. The majority of the Maryland Court then concluded that those cases are not soundly reasoned and proceeded to align Maryland with the small minority.[5] That minority now consists of two courts of last resort, including Maryland, and several inferior courts, some of which appear to be at variance with their own courts of last resort.
The Maryland Court's attack on the logic of the majority view is based primarily upon the premise that the reasoning in the majority rule cases works equally well to uphold or defeat a tax clause and that the result is to give precedence to one legal presumptionthat absent a provision in the will to the contrary, debts and expenses are charged to the residue over another legal presumptionthat absent an expression in the will to the contrary, taxes are charged to the persons receiving the gifts.
Whatever the merits of the Maryland Court's reasoning, we conclude that the present case can be distinguished from the Maryland case through review of the language of the tax clauses involved. The clause in the Johnson will merely directed "all estate and inheritance taxes" to be paid promptly, whereas the clause we consider directs the executor to pay "out of the principal and income, . . . all estate, inheritance, legacy and succession taxes levied upon or in connection with any property or interest either passing under this Will or treated as a part of my estate for the purpose of any such tax . . . ." (emphasis supplied) Appellants contend that the sole purpose of this language is to protect the gift to Mr. Pagel from taxes. We agree that the clause has that effect; however, we are unable to ascertain how it can be said that the tenants are not shielded from taxes as well when it is recognized that no property or interest passed to Mr. Pagel under the will,[6] while the tenants clearly received an interest that passed under the will. Actually the only word in the tax clause that needs interpretation is the word "principal" in the phrase identifying the fund to bear the burden of taxes. We hold that in this context the word refers to the residue of the estate remaining after the bequest to the tenants has been satisfied. That word has been so interpreted elsewhere. Franz v. Schneider, 14 Ill. App.2d 464, 144 N.E.2d 798.
In view of the language contained in Article I of decedent's will, we conclude that decedent intended to defeat the operation of the apportionment statute. Accordingly, the trial court did not err in ordering the executor to pay the taxes due out of the residue of the estate.
The judgment of the trial court is affirmed.
DUNN and FOSHEIM, JJ., concur.
MORGAN and HENDERSON, JJ., dissent.
MORGAN, Justice (dissenting).
I dissent from the majority holding for the reason that I do not believe that the language in the first clause indicates a clear intent to defeat the operation of the apportionment statute.
*175 The Maryland Court of Appeals in Johnson v. Hall cited in the majority opinion said "[i]n a tax allocation problem the text of the will is to be scanned only to see if there is a clear direction not to apportion, and if such explicit direction is not found, construction of text ceases because the statute states the rule." Citing In re Mills Estate, 189 Misc. 136, 64 N.Y.S.2d 105, 110 (1946). (Emphasis in original.) Along that same vein, this court has said in the case of In re Burns' Estate, 78 S.D. 223, 100 N.W.2d 399 (1960), "The intent to provide other than the statute provides must be clear and if there is doubt concerning the testator's intent to do so it must be resolved in favor of the operation of the statute." While Burns dealt with the anti-lapse statute, its reasoning is equally appropriate when dealing with the apportionment statute.
The majority holds that the only word that needs interpretation is "principal" and interprets it to mean residue, citing Franz v. Schneider, a 1957 Illinois Intermediate Court of Appeals decision. I find this case inappropriate to support the interpretation. Illinois had no apportionment statute, but rather used the burden on the residue rule unless the will provided otherwise.[*]Franz was a construction, not interpretation, case that was resolved by the appellate court's determination that the testatrix did not intend that two trusts pay taxes because she did not give the trustees power to sell or mortgage. The balance of her estate was the residue so the Illinois Court concluded that the testatrix in that case, by using the word "principal", meant residue.
Webster's Third New International Dictionary defines principal as "[t]he corpus or main body of an estate, portion, devise or bequestdistinguished from income" and goes on to define residue as "[t]he part of a testator's estate or any part thereof remaining after the satisfaction of all debts, charges of administration, statutory allowances for support of a widow or children, and previous devises and bequests." The difference between the two definitions does not require comment.
HENDERSON, Justice (dissenting).
I join in the dissent of Justice Morgan and would expand thereon. I would reverse the lower court's decision and remand with instructions to pay the taxes in question under SDCL 29-7-1, i. e., an equitable apportionment of the tax burden among the beneficiaries of this estate.
The majority opinion points out that Article I of decedent's will is "inartful" and "could more clearly reflect the intention of the testatrix concerning which fund was to be charged with the taxes."
The point is: If as the majority suggest, Article I is not clear then there is, therefore, no "direction" and hence the statute operates. The statute applicable, SDCL 29-7-1, expresses in substance that taxes are to be equitably apportioned unless otherwise directed. The will did not direct otherwise.
The testatrix was a millionairess who had consulted with at least two attorneys on planning her estate. She executed a will on April 4, 1973. The will was prepared by an experienced probate lawyer. There is, according to the majority opinion, only one word, "principal," in the first article of the will that needs interpretation. It is by logic and judicial interpretation of the majority opinion, not the words of the testatrix, that the majority opinion would substitute the word "residuary" for the word "principal." Perhaps by a leap of logic this may be done, but to my way of thinking it is not reasonable. I have always harbored a belief that the life of the law was reason and not logic.
SDCL 29-5-11 provides: "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained."
SDCL 29-5-1 provides: "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible."
*176 In Article I of her will, the testatrix provided for the payment of taxes from the "principal or income, or both." If testatrix intended that the residuary estate was to pay the taxes, she and her experienced probate attorney would have used the word "residuary" or words "residuary estate" rather than "principal or income, or both." The testatrix knew her estate, knew her residual property and knew what a residuary clause meant. In the will, she established a residuary estate. It is reasonable to assume that had she wanted to charge the residuary estate with payment of the taxes she would have so expressed. However, she did not. There is simply no language in this will by the testatrix that the residuary property be burdened with the taxes. Yet, under the majority holding, the residuary will pay.
SDCL 29-5-3 provides: "In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (emphasis supplied) Under the majority opinion "the words of the will" are absolutely abrogated by a substitution of this court's words.
Using the majority opinion's substitution of words, the phrase of the testatrix would then read: "I direct my executor to pay out of the residue or income, or both, of the property coming into his possession * *." Obviously, "property coming into his possession" has no residue. Further, the linking of the words "residue" and "income", as called for in the majority opinion, are legally incompatible and incapable of harmonious combination.
Although there is no South Dakota case construing South Dakota's apportionment statute, SDCL 29-7, the case of In re Burns' Estate, 78 S.D. 223, 100 N.W.2d 399 (1960), in construing South Dakota's anti-lapse statute, SDCL 29-6-8, established certain rules and law in this state useful in interpreting a decedent's will to see if the testator intended to provide contrary to statute. In determining whether the testatrix intended to provide otherwise than the anti-lapse statute provided, the court set guidelines, one of which Justice Morgan highlighted in his dissenting opinion. Three additional guidelines can aid in a just decision in this case:
(a) A testator's intention to provide otherwise than the statute must be a testator's intent at the time he executed his will. Burns', supra.
(b) "It is generally presumed that the testator made his will in view of the statute and intended to have the statute apply unless the contrary intention appears. If that does not appear the statute is a part of the will. It was intended to supplement the will and not to defeat it." Burns, supra, 78 S.D. at 229, 100 N.W.2d at 402, citing Union Trust Co. v. Richardson, 70 R.I. 151, 37 A.2d 777.
(c) If a testator does not want a statute to apply, he can very easily show a contrary intent in his will. It is not for the court to decide. Burns', supra.
Using the above guidelines, we should ask if the testatrix intended to provide other than South Dakota's statutory scheme for proration of federal estate taxes as found in SDCL 29-7 or on South Dakota inheritance taxes as found in SDCL 10-41-65, 10-41-68, 10-41-70, 10-41-71, and 10-41-80. My conclusion is that she did not.
In Matter of Estate of Nelson, S.D., 250 N.W.2d 286 (1977), this court considered a case dealing with the interpretation of a will. We held that in the interpretation of a purported will in that case that if doubt remains as to the decedent's intent, the language used and the circumstances surrounding the execution of the writing will be examined in the light of pertinent rules of construction. These rules would include SDCL 29-5-1, 29-5-3, and 29-5-11. In this same opinion we indicated that courts may supply words in a will as long as it is not done arbitrarily and done only when the meaning is clear. I suggest that supplying *177 "residuary", "residual", or "residuary estate" would be arbitrary as it would create in the testatrix's Article I a phrase that is mutually antagonistic.
This matter was heard by the trial court solely on affidavits and written exhibits and therefore this court's review of the evidence is unhampered by the rule that the trial court who has observed the demeanor of witnesses is in a better position to intelligently weigh the evidence than the Justices of this court. The Supreme Court may determine the facts through the written evidence in the record. Complaints as to findings of fact and conclusions of law based thereon then lose their traditional significance. The Supreme Court's inquiry therefore is whether the trial court erred in ordering that all taxes be paid by the charities and not equitably apportioned. National Surety Corporation v. Shoemaker, 86 S.D. 302, 195 N.W.2d 134 (1972).
The controversy here at issue arose from the executor's most presumptive and bold act of paying all taxes from the residuary without the apportionment required under SDCL 29-7-1 and then, after the fact, petitioning the circuit court for a determination as to whether Article I of the will relieved the tenants of their burden to pay the estate and inheritance taxes. The trial court supported the executor and based its reasoning upon the premise that the testatrix's payment of estate taxes with the payment of debts and expenses of administration showed her intent to exonerate the tenants. In other words, the trial court relied upon a "grouping" theory.
The trial court leaned heavily in supporting the executor upon the case of In Re Ogburn's Estate, Wyo., 406 P.2d 655 (1965) for its "grouping" theory. Indeed, its findings of fact VIII expressed:
The Court finds that when the decedent grouped together the payment of all taxes, together with the debts and expenses of administration that she knew that all expenses of administration, illness and funeral [expenses] were to be paid without apportionment under South Dakota law and accordingly the Court finds that the decedent intended that the inheritance, estate and succession taxes be treated in the same manner. Accordingly, the Court finds that when the decedent used the word `principal' in said Article I, that she intended that the `principal' of her estate referred to the residue thereof under Article III.
The trial court's theory was that since the payment of taxes was grouped into the same clause directing payment of debts and expenses of the estate of the testatrix must have intended that the taxes be paid from the same property that debts and expenses are to be paid from under SDCL 29-6-7. The genesis of that particular statute is that debts of an estate shall be paid first from the residuary estate before looking to the specific bequests. This theory fails to consider, however, that SDCL 30-23-1 provides that devisees and legatees are "liable for the debts, expenses of administration, and the allowance to the family in proportion to the value or amount of the several devises or legacies" except that specific devises or legacies are "exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient property." Thus, while it is true that SDCL 29-6-7 requires that the debts of an estate be paid from the residuary estate before resort to the specific devises and bequests, SDCL 30-23-1 requires debts, expenses of administration and family allowance be prorated among devisees and legatees unless the testator otherwise directs. Therefore, in reading the two statutes together, it appears that the grouping of the payment of taxes with the same clause referring to the payment of debts and administration would not show an intent that the taxes in question be paid from the residuary.
The Ogburn case, supra, adopted the "grouping" theory. In Wyoming, the court held that since the direction to pay taxes was found in the same clause as the direction to pay debts, funeral expenses and expense of administration and since those debts and expenses were payable under that state's law from the residuary, that the *178 residuary should be charged with the federal estate taxes. The Wyoming court held that the clause was not sufficient to prohibit proration of state inheritance taxes. The important distinction to be made is simply that the Wyoming and South Dakota statutes are dissimilar as regards the payment of expenses.
The "grouping theory" was rejected by the Supreme Court of California in In Re Armstrong's Estate, 56 Cal.2d 796, 17 Cal. Rptr. 138, 140, 366 P.2d 490, 492 (1961). In that case the clause provided:
`I direct my executor or executrix to pay out of my estate all my just debts, funeral expenses, expenses of administration, and all estate and inheritance taxes which may become due by my death, without limitation to property passing under my will.'
The California court said that the "grouping theory" was a "possible interpretation, but it is not the most reasonable one." The court noted, in holding that non-probate assets as well as the probate assets would have to prorate taxes according to that state's statute, that a clause leaving an ambiguity or ambiguities was to be resolved in favor of the apportionment statutes. And this is the spirit of the rule previously announced by this court in In Re Burns' Estate, supra.
Many of the states in the union, believing that every portion of the estate that created the tax burden should bear its fair share of the tax burden, passed proration statutes. As was stated in Estate of Buckhantz', 120 Cal.App.2d 92, 260 P.2d 794 (1953), the "object sought to be accomplished by the proration statutes is the equitable allocation of the burden of the tax among those actually affected by [the] burden," citing Security-First Nat. Bank of Los Angeles v. Wellslager, 88 Cal.App.2d 210, 198 P.2d 700 (1948); In re Chambers' Estate, Sur., 54 N.Y.S.2d 88 (1945); In re Wahr's Estate, 370 Pa. 382, 88 A.2d 417 (1952); 47 C.J.S. Internal Revenue § 776, p. 1016. Over one-half of our sister states, beginning with New York in 1930, have adopted apportionment statutes.[*] See Buckhantz', supra, 260 P.2d at 796 n. 2, for the states having so adopted through 1953.
The grouping theory relied upon by the trial court is inapplicable to the will in this case because South Dakota law does not require that expenses of administration be paid first from the residuary but rather requires that all devises share expenses of administration proportionately unless there is a direction in the will to the contrary.
I cite with approval 69 A.L.R.3d 122, 144, § 2(c) which provides as follows:
A testator who desires to shift the burden of death taxes from the person or fund which is liable under the law to some other person or fund is free to employ any words or combination of words that he desires. All that is required is that the will sufficiently express an intention that the tax burden shall be changed. A few simple words may suffice to indicate the intent and effectuate the purpose.
Nevertheless a good tax clause should expressly state (1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted. While a tax clause may be effective even if it does not expressly cover these three elements, the use of a vague clause invites a lawsuit where interests are conflicting.
While it is said that if reasonably ascertainable, the intent of the testator as to who should bear taxes and how they are to be paid must control, it is much more often said that an intention to shift the burden of taxation must clearly appear in a will, and that in case of doubt as to the meaning of the will, the tax burden will be left where the law places it. A strong reason for requiring that an intention to alter the burden of taxation be clearly expressed lies in the fact that the practical effect of freeing a testamentary *179 gift or benefit from the burden of taxation is to increase that gift or benefit while at the same time the burden of taxes is cast elsewhere and cuts down some other gift.
These principles are particularly applicable to a `direction against apportionment' which is a special type of tax clause, namely, one aimed to avoid or overcome a statute providing for apportionment or proration of the estate tax unless it is otherwise directed or provided by will or an inter vivos instrument. (emphasis added)
As I read over the will of the testatrix in this case, I see no clear intention to shift the burden of taxation.
The authors of 71 A.L.R.3d 247, abstract cases which deal with state statutes concerning the apportioning of estate taxes, such as involved in this case. The authors note:
The principal purpose of the enactment of such [apportionment] statutes is to avoid the results sometimes attendant upon the general rule that the burden of estate taxes, in the absence of a contrary direction by the decedent, falls upon the residuary estate and, usually, the natural objects of the testator's bounty . . .
* * * * * *
The aim of the statute is to promote the presumed intention of most testators. 71 A.L.R.3d 247, § 3(b), at 268-271.
In 71 A.L.R.3d 247, § 17(b) at 318, the authors note:

Departure from apportionment under state statutes, whether in regard to nontestamentary property, or in regard to the allowance of the benefit of exemptions or deductions provided by the taxing statute, is permissible only where the directions against apportionment are clear and unambiguous and open to no other interpretation.

In this respect the will is subject to strict construction, and doubts and ambiguities are resolved in favor of apportionment.

Where any doubt arises as to the testator's intention in a tax clause directing his executors to pay all death taxes, the tax clause lacks the clarity necessary to make the proration statute inoperative as to residuary gifts. In case of doubt as to what the will or trust means on the subject of taxes the statutory direction to apportion is absolute. The proration statute applies regardless of whether such was the actual intent of the testator in including an ambiguous provision in his will. Extrinsic evidence of intent cannot be utilized to construe an ambiguous direction; and the fact that a party offers to introduce evidence extrinsic to the will to show the intention of the testator is an indication that the will is ambiguous. (emphasis added)
There is a strong public policy in favor of the applicability of the apportionment statute and those who contend that the apportionment statute does not apply (the farm tenants in this case) must bear the burden of proof. 42 Am.Jur.2d, § 387. I do not believe that they have met that proof.
There is also a preference for a construction which maximizes gifts to charities and the tax reduction due to increased charitable deductions. It is presumed that a testatrix desires to take full advantage of all available tax deductions in marital and charitable residuary dispositions. 69 A.L. R.3d 122, § 9, 231-233.
In summary, I emphasize that the rules state that an intention to shift a tax burden must clearly appear, there must be a clear direction not to apportion, there is a strong public policy in favor of the applicability of the apportionment statutes, those who contend that the apportionment statute does not apply must bear the burden of proof, there is a preference for maximizing gifts to charities, and it is presumed that a testatrix desires to take full advantage of all available tax deductions.
This court, I believe, in justice and equity, should reverse the ruling of the trial court and require the tenants to return to the executor the $51,030 in inheritance tax and interest paid to the State of South *180 Dakota plus interest on that amount. In addition, the court should order that the tenants return to the executor the $342,877 paid in federal estate tax with interest thereon from date of payment and direct the executor to file claim for refund for overpayment of taxes with the Internal Revenue Service. This will result in an increased charitable bequest of $492,001 unto the appellants and avoid a tax windfall to the Internal Revenue Service of $140,252.
NOTES
[1] SDCL 29-7-1 provides:

Except as otherwise directed by the decedent's will, all federal estate taxes which are payable with respect to the property comprising an estate for such tax purposes, whether or not such property passes under a will, shall be equitably apportioned among the persons interested in such estate to whom such property is or may be transferred or to whom any benefit accrues.
SDCL 29-7-2 provides:
Such apportionment shall be made in the proportion that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate; provided, however, that no such taxes shall be apportioned against the surviving spouse, or any other person with respect to property received by such surviving spouse or other person, the value of which is deductible for federal estate tax purposes.
[2] The United States Supreme Court has determined that the question of how federal taxes are to be apportioned is a matter of state law. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106. Therefore, we treat the tax burden as a whole without distinguishing between state and federal taxes. See also I.R.C. §§ 2206, 2207.
[3] It has been said that a few simple words expressly stating "(1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted," will constitute a sufficient tax clause. In re Ogburn's Estate, Wyo., 406 P.2d 655 at 658; 28 Am.Jur., Inheritance, Estate, and Gift Taxes, § 488, p. 353. The present tax clause is inartful in that it could more clearly reflect the intention of the testatrix concerning which fund was to be charged with the taxes.
[4] The following cases are collected in Johnson v. Hall, supra, 283 Md. at 649-653, 392 A.2d at 1107-1108. See Baylor v. Natl. Bank of Commerce of Norfolk, 194 Va. 1, 72 S.E.2d 282; Starr v. Watrous, 116 Conn. 448, 165 A. 459-460; In re Bett's Estate, 2 Ill.App.2d 453, 119 N.E.2d 801, 803-804; University of Louisville v. Liberty Nat. Bank & T. Co., Ky., 499 S.W.2d 288, 289 (overruling McKinney v. Mt. Sterling Nat. Bank, 310 Ky. 186, 220 S.W.2d 379, 382-383); Succession of Jones, La.App., 172 So.2d 312, 315; Thomas v. Fox, 348 Mass. 152, 202 N.E.2d 912, 913; In re Hund's Will, 266 App. Div. 379, 42 N.Y.S.2d 505, 506-507; In re Moritz' Will, 48 Misc.2d 323, 264 N.Y.S.2d 734, 737; In re James' Estate, 180 Misc. 441, 40 N.Y.S.2d 4, 6, aff'd 267 App.Div. 761, 45 N.Y.S.2d 938; Gaither v. United States Trust Company of New York, 230 S.C. 568, 97 S.E.2d 24, 26-27; In re Cudahy's Will, 251 Wis. 116, 28 N.W.2d 340, 341; In re Ogburn's Estate, Wyo., 406 P.2d 655, 657; see In re Bauer's Will, 54 Misc.2d 1060, 284 N.Y.S.2d 98, 104; In re Herz' Estate, 203 Misc. 1077, 119 N.Y.S.2d 129, 132-133; In re Horn's Estate, 351 Pa. 131, 40 A.2d 471, 473.
[5] Cases collected in Johnson v. Hall, supra, 283 Md. at 651, 392 A.2d at 1108. See In re Estate of Cummings, 263 Cal.App.2d 661, 69 Cal.Rptr. 792, 797; In re Keller's Estate, 134 Cal.App.2d 232, 286 P.2d 889, 892; In re Grondin's Estate, 98 N.H. 313, 100 A.2d 160, 162-163; In re Robords' Estate, 69 Misc.2d 1026, 332 N.Y.S.2d 698, 701-702; In re Carrington's Estate, Ohio Prob., 1 Ohio Op.2d 72, 136 N.E.2d 182, 184-185; Skaggs v. Yunck, 10 Or.App. 536, 500 P.2d 1230, 1231.
[6] Article III of the will provided in part "I have provided outside of my will for George Pagel, who has been my manager and confidant for many years."
[*] Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407 (1943).
[*] For a general treatise and history of statutes apportioning estate taxes, see 71 A.L.R.3d 247, 265.