James D. Hopkins, J.
This is an executor’s intermediate accounting proceeding in which the court is required to resolve the following issues:
1. Whether or not the person designated in the will as Myrtle Schneider is entitled to receive any portion of the residuary estate.
2. Whether or not estate taxes are payable out of the general estate without apportionment.
3. The reasonable value of the services rendered by the firm of attorneys, one of whose members is the sole executor.
The testatrix died a resident of Westchester County on March 15, 1956 and her will and two codicils thereto, dated November 23, 1954, December 8, 1954 and August 26, 1955 respectively, were duly admitted to probate on May 16, 1957.
Under subdivision “ (7) ” of article “ third ” of her will, the testatrix bequeathed the Sum of $10,000 to Myrtle Schneider, and the aforesaid legacy was revoked under article ‘ ‘ second ’ ’ of the first codicil which provides as follows: ‘ ‘ Myrtle Schneider has presented claims against the estates of my brother, now deceased, and my sister, now deceased, and I have been anxious that she receive extra compensation for the care she gave to these two people who were so very dear to me. As these claims had not been adjusted at the time I made my Will, I wanted to be sure that Myrtle was justly rewarded and I therefore named her as a legatee in the amount of $10,000. Claims against these two estates have now been adjusted satisfactorily to Myrtle, and I believe at a very ample sum, in view of the fact that she was receixdng a salary all the time she worked for my brother and sister. As I must contribute better than eighty (80%) percent of this settlement, I feel no obligation to continue her as a legatee under my Will, and therefore revoke the $10,000.00 legacy which I gave to her in said instrument.”
Myrtle Schneider has interposed objections to the account and asserts that she is entitled to share in the residuary-estate by reason of article “fifth” of the will which provides as follows : ‘ ‘ All the rest, residue and remainder of my estate, including any lapsed legacies, I give, devise and bequeath unto the legatees, except my said husband, xvho will take under this Will or any Codicil thereto which I may hereafter execute, and they shall share therein in the same proportion as their legacy bears to my entire estate, as I have no desire to die intestate as to any of my estate. ”
The objectant relies strongly on Wetmore v. Parker (52 N. Y. 450) to sustain her position. The original will in that case contained two general legacies of $10,000 each in favor of the Utica *935 Female Academy and the Reformed Dutch Church. Article “ seventeenth ” of that will provided as follows: “ I give aud bequeath all the rest and residue of my estate to the several persons, corporations and societies to whom 1 have hereinbefore made bequests, and who shall be living and existing and able to take the same, in proportion to the amounts given and bequeathed to them respectively.” (Emphasis added.)
In two codicils executed by the testatrix $3,000 of the $10,000 legacy to the Female Academy was revoked, and the entire $10,000 legacy to the Reformed Dutch Church was revoked. In revoking the legacy to the Female Academy, the testatrix stated that $3,000 had been paid by her to the Female Academy which was intended as an advancement. In revoking the legacy to the Church, the testatrix stated that ‘ ‘ it now appearing probable that said purpose will soon be accomplished, and I having concluded to give at this time the sum of $3,000 toward the extinguishment of the debt incurred as aforesaid. (I) do hereby revoke ’ ’ the legacy.
The court construed the will and determined that it was not the intention of the testatrix to deprive the Dutch Church from sharing in the residuary estate, nor was it her intention to restrict the Female Academy to the proportion of the residuary estate represented by the $7,000 legacy instead of the $10,000 legacy. In arriving at that conclusion, the court relied upon the general rule that a codicil will not operate as a revocation beyond the clear import of its language, and that an express intention to make an alteration in a will in one particular negatives, by implication, an intention to alter it in any other respect. It is significant to note that the original legacies in favor of the Female Academy and the Church were made in each case for the purpose of erecting a building, and that during the lifetime of the testatrix the purpose of such original legacies had been accomplished.
The court reasoned that the preresiduary gifts in favor of the two legatees in each instance were independent of the provisions in favor of them contained in the residuary clause of the will. As the court pointed out (Wetmore v. Parker, supra, p. 462) the object of the latter gifts were “ to contribute toward a fund for permanent support.” In the instant case, it does not appear that there is any distinct difference in purpose between the residuary and the preresiduary gifts in favor of Myrtle Schneider. It is further noteworthy that the residuary clause of the testatrix’ will provides for a proportionate distribution to those persons “ who will take under this will or any codicil thereto” (emphasis added), as contrasted to the residuary *936 clause in the Wetmore will which provides for a proportionate distribution to those “ to whom I have hereinbefore made bequests.” Thus, in the Wetmore. will the class of residuary legatees was delimited by the persons already named in the will as general legatees; in the instant will the class of residuary legatees is delimited by the persons who will take as general legatees as a result of the will and codicils read together, in accordance with the prevailing doctrine.
In Hard v. Ashley (117 N. Y. 606) the court was required to determine the effect of a codicil upon the rights of a beneficiary to share in the residuary estate. Under testator’s will, his residuary estate was given “ to the same parties, in the same ratio and proportion as are given and specified in the foregoing bequests ”. One of the gifts provided for in the will was a farm valued at $15,000 and under the terms of a codicil such gift was revoked and there was substituted in lieu thereof a legacy of $8,000. The court, citing Wetmore v. Parker (supra) with approval, held that the named beneficiary was entitled to share in the residuary estate. However, it is noteworthy that the court did not follow the holding in Wetmore v. Parker (supra) but instead reduced the beneficiary’s proportionate share in the residuary estate so that instead of receiving fifteen sixty-fourths of the residuary estate, she received only eight fifty-sevenths of the residuary estate. Following the aforesaid reasoning to its logical conclusion, the objectant herein would not'be entitled to share in the residuary estate since the numerator of' her fractional share would be reduced from $10,000 to zero.
The primary canon of construction requires that the court, wherever possible, ascertain and give effect to the intention of the testator. (Matter of Buechner, 226 N. Y. 440; Matter of Lyons, 271 N. Y. 204.) The intent of the testatrix in revoking the legacy to Mrs. Schneider seems evident. Originally, the testatrix apparently felt a moral obligation to her for the care which she had rendered to the brother and sister of the testatrix, and therefore bestowed upon her a general legacy and a residuary share of the estate as well. Soon after the making of the will, the testatrix revoked the gift, since in her words “ [C]laims against these two estates have now been adjusted satisfactorily to Myrtle,” and consequently she felt “ no obligation to continue her as a legatee under my Will ”. (Emphasis added.)
This expression is eloquent in its forthright statement that the testatrix appreciated that she had already contributed more than 80% of the settlement of Mrs. Schneider’s claim. In this setting the action of the testatrix in revoking Mrs. Schneider’s *937 legacy must be viewed in the light of the change of conditions since the making of the will (Matter of Brann, 219 N. Y. 263, 266). The strict interpretation of the effect of a codicil on the terms of a will, as defined in the doctrine of implied revocation, does not accordingly apply here. (Newcomb v. Webster, 113 N. Y. 191, see cases collected in annotation in 51 A. L. R. 652, 692, as supplemented by 123 A. L. R. 1395, 1404 and 59 A. L. R. 2d 11, 75.)
Hence, due regard for the language employed by the testatrix in revoking the legacy to Myrtle Schneider, coupled with the distinguishing factors between her will and the will in the Wetmore case, leads the court to conclude that the testatrix under article ‘ ‘ second ’ ’ of the first codicil intended not only to revoke the $10,000 legacy but also to revoke the provisions in favor of Myrtle Schneider contained in the residuary clause (art. “ fifth ”) of her will.
Article “first” of the will provides as follows: “I direct that all my just debts and funeral expenses be paid as soon after my decease as possible; and I further direct that all estate, inheritance or other taxes levied as a result of my decease be paid by and out of my estate, and that no one who may receive any assets or monies as a result of my decease, shall be called upon to contribute toward the payment of such taxes.” The above-quoted provision is virtually identical to article ‘ ‘ first ’ ’ of the will of the testatrix’ husband. He predeceased her, having died on March 8, 1956, and his will dated December 15, 1953 was duly admitted to probate pursuant to a decree of this court dated April 2, 1956. On April 2, 1959 Surrogate Dillon rendered a decision construing the husband’s will (see Matter of Wheeler, 19 Misc 2d 335), in which it was determined that estate taxes should have been apportioned within the residuary estate in order to give the charitable beneficiary the full benefit of the exemption to which it was entitled. Under article “ second ” the testatrix gave her husband “ fifty (50%) percent of so much of my estate as remains after the payment of all claims, taxes, administration and legal expenses ”. (Emphasis added.) No similar provision relating to the payment of estate taxes is contained in any of the dispositive provisions of the husband’s will. Although article “ second ” is inoperative by reason of the fact that the husband predeceased the wife, the language contained therein must nevertheless be taken into consideration in seeking to ascertain the intention of the testatrix, since no words are “ to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant”. (Matter of Buechner, supra; Davids, New *938 York Law of Wills, § 464.) I am in accord with the reasoning set forth in Surrogate Dillon’s decision construing the husband’s will and am mindful that the policy of the law embodied in section 124 of the Decedent Estate Law commands that a direction against the apportionment of taxes must clearly and unambiguously appear in the will; otherwise the tax burden falls where the law places it. (Matter of Mills, 189 Misc. 136, affd. 297 N. Y. 1012.) However, when article “ second ” of the will is read in conjunction with article ‘ ‘ first ’ ’ there is no ambiguity with respect to the source of payment of estate taxes as there was in the husband’s will. Accordingly, it is determined that estate taxes are payable out of the general estate without apportionment. (Matter of James, 180 Misc. 441, affd. 267 App. Div. 761.)
The last issue to be determined is the fair and reasonable value of the services rendered by the attorneys. This is an intermediate accounting proceeding and, although much work has been done by the attorneys, it is difficult to evaluate their services in view of the fact that there has been no final determination with respect to the Federal and State estate tax proceedings. As was pointed out in Matter of Potts (213 App. Div. 59, 62, affd. 241 N. Y. 593), the factors to be taken into consideration in fixing the fair and reasonable value of attorneys’ fees are “ the time spent, the difficulties involved in the matter in which the services were rendered, the amount involved, the professional standing of counsel, and the results obtained ’ ’ of which the most important factor is, of course, the results obtained. Under these circumstances, the court will deny the application for the fixation of attorneys’ fees at this time and postpone the ultimate determination thereof until the final accounting. However, the executor is authorized to pay the firm of attorneys $10,000 on account, in partial satisfaction for the services rendered to date. Settle decree.