Samuel J. Silverman, S.
These are objections to a voluntary accounting by the executors.
The gross assets for which the executors claim to be accounting amount to $114,128 (including some income). Creditors’ claims, according to the account, amounted to $27,264 (of which $25,000 represented a secured bank loan).
In this estate there are three executors named in the will, each of whom asks for a commission; the three executors have two attorneys and an accountant, each of whom asks for a fee. The totals thus requested, according to the accounting, amount to $8,516 commissions, $7,500 attorneys’ fees and $1,500 accountant’s fees, or a total of $17,516 —15.3% of the estate before debts, secured and unsecured, and 20.2% of the estate after debts.
The three executors have no interest in the estate except as fiduciaries. The objectants are the residuary legatees.
The parties have stipulated that if the court allows multiple commissions, the base of the multiple commissions will exclude the- $25,000 mentioned above and $4,500 real estate. But, on the other hand, they have stipulated that if the court does not allow multiple commissions, then the single commission to be divided among all three executors shall include commissions on the $25,000 and the $4,500.
1. The first issue is whether petitioners, the three executors, are entitled to multiple commissions under subdivision 5 of section 285 of the former Surrogate’s Court' Act (SCPA 2307, subd. 5) of only a single commission. The parties are agreed that if the value of the assets for purposes of determining whether there are multiple commissions is to be calculated with *513 out deduction of the $25,000 indebtedness, then the executors are entitled to multiple commissions, whereas if the value of the assets is to be determined after deduction of said indebtedness, then they are not entitled to multiple commissions but only one commission to be divided among the three executors.
The facts as to this indebtedness are that at his death decedent had a collateral loan with a bank in the sum of $25,000 (with interest), secured by stocks and bonds having a substantially greater market value, in the possession of the bank and held by the bank as pledgee. Decedent had executed stock powers to make the securities negotiable in form.
The executors decided to liquidate the loan and, accordingly, by arrangement with the bank, they picked a stock broker and opened an account in the name of the executors with the broker. They ordered the sale of certain securities (which were in the. possession of the bank). The bank delivered the securities to the broker against either actual or promised payment by the broker of the proceeds to the bank. The broker paid the proceeds of the sale of the securities directly to the bank. The bank credited the proceeds against the loan and credited the balance of the proceeds to the decedent’s account and released to the executors the remaining unsold securities.
(a) It appears clear, in determining the amount of any executor’s commission (disregarding the question of whether commissions are multiple or single), commissions would have to be calculated on the assets less the amount owed on the loan. The executors are entitled to commissions “ for receiving and paying out all sums of money.” (Surrogate’s Ct. Act, § 285, subd. 1; SCPA 2307, subd. 1.) The executors never received or paid out this $25,000 owed to - the bank. Nor did they ever have possession or control of the securities until after the loan was paid.
There was a suggestion that this case is somehow different from a brokerage loan on a margin account, where it is clear that the executors do not receive a commission on the debit balance. (Matter of Mercantile Trust Co., 210 N. Y. 83 [1913].) The difference, however, appears to be merely one of mechanics, arising from the fact that the loan was with a bank rather than a broker. This was a perfectly usual collateralized bank loan. Matter of Mills (149 Misc. 389 [Surr. Ct., N. Y. County, 1932], affd. 239 App. Div. 817 [1933], affd. 263 N. Y. 574 [1933] seems a fortiori authority for the proposition that a single commission would have to be calculated only on the equity in the securities.
(b) What we are here concerned with, however, is not the amount of one commission but whether there shall be more than *514 one commission. The statute as to this is somewhat different. Subdivision 5 of section 285 of the Surrogate’s Court Act (now SOPA 2307, subd. 5) provided that each of three executors may receive a full commission “ if the gross value of the principal of the estate * * * accounted for amounts to [$100,000] or more”.
In a study prepared for the Temporary Commission on Estates, research counsel said: “ Thus it is not at all impossible that under current interpretations of the statute executors would not be entitled to compute the amount of commissions by using the gross value of assets subject to a lien, but because that value must be used in determining the number of commissions they would find themselves entitled to more than one. No case has been found in which this issue has arisen.” (Fifth Report of Temporary Comm, on Estates, [N. Y. Legis. Doc., 1966, No. 19], p. 148.)
The issue does arise in this case. I hold that as to this item the same calculation of value of estates is to be used for determining whether there shall be more than one commission as is used in determining the amount of the commissions, i.e. the value of the securities after deduction of the amount of the indebtedness.
I think this makes for a more logical system.
It is obvious that the reason for not allowing multiple commissions where the estate is less than $100,000 is to avoid burdening small estates with heavy administration expenses. Obviously, a man who has $100,000 of securities pledged to secure an indebtedness of $25,000 is no richer than a man who has $75,000 of securities free and clear. In interpreting the $100,000 provision, it would seem to be more in line with the legislative intent to make the calculation on the basis of the economic realities rather than on a formal basis without regard to economic reality. Furthermore, the reason for the $100,000 condition would seem to imply that, if anything, that condition should be more strictly interpreted (against the grant of multiple commissions) than the provision as to fixing the base for single commissions. Thus, single commissions may be paid on income; multiple commissions require a principal of at least $100,000. And again, specific legacies being excluded by the statute from the base for single commissions (Surrogate’s Ct. Act, § 285, subd. 2; SCPA 2307, subd. 2), this court has also excluded such legacies from the calculation of the $100,000 “ gross value of the principal of the estate or fund accounted for (Matter of Story, 121 Misc. 772 [1923].)
*515 The only basis suggested for making the distinction between the treatment of pledged assets for the purpose of fixing a single commission and for the purpose of determining whether there shall be mulitple commissions is the difference in language, i.e. the use of the words £ 6 gross value ’ ’ in connection with multiple commissions. But it is £ 4 gross value of the principal of the estate or fund accounted for ” that is to be used. The principal of the estate accounted for is that which comes into the executor’s hands. The executors here never got their hands on securities having a gross value that included the indebtedness.
At all times before the gross amount of the securities had been reduced by the $25,000 liquidation, the bank alone had possession and control of the securities. The executors did not obtain possession and control until the securities had been reduced by the amount of the indebtedness. Thus, the unincumbered securities never formed a part of the principal of the estate to be accounted for; it was only the equity in the securities after the indebtedness that was a part of that principal.
What then do the words ££ gross value ” in the multiple commissions subdivision mean? I think they mean not assets without regard to the amount of liens, but assets without regard to nonlien debts. As an executor’s services are the same whether the assets of which he obtains possession and control are distributed by him to legatees or to creditors, so his commissions are the same. The legislative history bears out this interpretation. Prior to 1905, the multiple commissions statute (then Code Civ. Pro., § 2730) provided: ££ If the value of the personal property of the decedent amounts to [$100,000], or more, over all his debts ’ ’. By chapter 328 of the Laws of 1905, this section was amended to read: ‘1 If the gross value of the personal property of the decedent amounts to [$100,000] or more ”, the word ££ gr oss ” being added and the words “ over all his debts ” being eliminated. The memorandum of the Governor’s Counsel (Cuthbebt W. Pound, later Chief Judge of the Court of Appeals) with regard to this bill, said:
££ Under the existing law, if the value of a personal estate of a decedent amounts to more than $100,000 over his debts, each executor or administrator is entitled to full compensation, not exceeding three.
££ This act provides they shall be so entitled to compensation if the gross value of the personal estate exceeds $100,000, without regard to the amount of debts. ”
Accordingly, I hold that only one commission shall be paid here to be divided among the executors and to be calculated in accordance with the stipulation.
*516 2. attorneys’ fees
There are two attorneys in this estate. It is well established that where there is more than one attorney, the total fees to all attorneys shall not exceed one attorney’s fee. There were some minor problems in the case. The fee of Harry M. Krokow, Esq. is fixed at $3,500; that of Gabriel Wartels, Esq. is fixed at $1,000.
3. accountants’ fees
The executors retained a firm of accountants. The estate was a rather simple one. The accounting presented no particular problems. There is nothing to indicate that the various tax returns presented any unusual problems. But the fact that there were three executors — a situation created by the testator — must inevitably have led to increased problems of communication and co-ordination of their efforts. On the other' hand, the fact that the attorney, as so frequently happens, was doing a large part of the executors’ work for them and was handling the detailed operation of the estate, did not justify the executors in hiring accountants at the estate’s expense to audit the attorney’s records to make sure that the attorney was doing properly what the executors should have been doing themselves. The compensation of the accountants payable by the estate is fixed at $500.