John M. Keane, S.
The guardian ad litem in this accounting proceeding has filed two objections. One is addressed to a claim for commissions on a parcel of real property and the other relates to payment of decedent’s notes held by the corporate fiduciary. Additionally, the court, on its own motion, requested that counsel submit briefs on the question of apportionment of estate taxes and, also, whether the three fiduciaries should receive a full commission each or a single commission. To understand the problems, a brief recital of the facts is required.
Ethel M. Robords left her surviving as her distributees two daughters, one with four children and the other with five children. She left surviving, additionally, a sister. Except for $1,020.25 in two small life insurance policies payable to the daughters and $6,498 in transfers made within three years of death to the daughters, all of her property was in her own name at the time of her death. Thus the property accounted for in this proceeding, except for the two items mentioned, comprises the same as reported in the estate tax proceeding.
The principal accounted for amounted to $196,511.18, to which was added increments earned of $6,484.70, making a total principal of $202,995.88. The nature of the assets *1028 becomes significant in the over-all plan of the decedent. $96,476.50, or almost half of the principal, was represented by shares of IBM stock. Except for three shares specifically bequeathed to her sister, decedent specifically bequeathed this IBM stock equally to her two daughters. Her will made a bequest of $1,000 to her church and small specific bequests of a car valued at $2,800 to her sister and other personal property to her family, amounting to $730.50.
The balance was left in a single trust for the benefit of her nine grandchildren, ranging in age from 4 to 18 years, which would continue until the youngest had attained 25 years of age. This trust was designed primarily to insure the education of decedent’s grandchildren. Neither the plan of the testatrix nor the will itself is complicated. However, the questions here involved have a most significant bearing on the size of the residuary trust created for the benefit of her grandchildren.
Decedent’s two daughters and First-City National Bank of Binghamton, N. Y., were named as executors and the bank was named as sole trustee of the trust above mentioned.
The first objection of the guardian ad litem relates to a claim for commissions on the property mentioned in paragraph ‘ ‘ Fourth ’ ’ of the will of the decedent. The paragraph reads as follows:
“ Fourth, I hereby direct my Executors, hereinafter named, to sell and liquidate my cottage property located at Waneeta Lake, Schuyler County, New York State, together with all furnishings, accessories, equipment and personal property located thereat, and to divide the net proceeds therefrom equally between my beloved daughters, mildred benjamin and Virginia powers; specifically providing however, that in the event either of said daughters shall desire to own said cottage outright in her own name, then I direct my Executors to determine the fair market value of said cottage property by competent appraisal and convey same to such daughter for one-half of such appraisal, the other half to be deemed a portion of her legacy hereunder.”
The executors have claimed commissions upon the value of the cottage premises. One of the daughters did agree to take the cottage and the alternative was actually implemented.
The language of paragraph “Fourth” is not that of a specific devise (SCPA 2307, subd. 2) of. the real property. The primary instructions are to sell the property and divide the proceeds. The alternative described by the decedent has *1029 more of the characteristics of a sale than a specific devise and does not change the nature of the transaction from one upon which commissions would be payable. In fact, had the alternative not appeared, the parties might well have followed the same procedure that actually occurred by one daughter taking the entire title and reimbursing the estate.
The decedent obviously was aware of the problems of dual ownership of a cottage and believed it best to direct its sale in the first instance. In the event that one of her children wished to keep the cottage, she wanted to provide a method of carrying out this intention also. However, this method was not sufficient to make a specific devise. Therefore, commissions will be allowed upon the value of the cottage as set forth in the accounting.
The next question relates to the apportionment of estate taxes under EPTL 2-1.8. Does the language in paragraph “ First ” as follows:
“First, I direct that all of my just and provable debts, taxes and funeral expenses be paid as soon after my decease as may be found convenient ”, constitute “ a clear and unambiguous direction against apportionment of taxes as prescribed by section 124 of the Decedent Estate Law [now EPTL 2-1.8] ”? (Matter of Pepper, 307 N. Y. 242, 246 [1954].)
The apportionment statute has been fruitful of much litigation. It will probably continue to be fruitful because of variation in the language of will draftsmen. As stated in Matter of Shubert (10 N Y 2d 461, 471 [1962]): “ There is a strong policy in favor of statutory apportionment, and those controverting its application must bear the burden of proof”. The two daughters, whose specific bequest of IBM stock was substantially one half of the decedent’s estate and who would be most adversely affected by apportionment of taxes according to EPTL 2-1.8, argue that the word “taxes” in paragraph “First” is sufficient to direct that all estate taxes be paid as an expense of administration.
This decision would be unduly extended if an analysis were made of all the recent decisions on this precise question. To succeed against apportionment, the words “estate taxes ” or some synonyms usually appear in the disputed language. Or there are subsequent provisions which when read together can support a finding that no apportionment be made. Here only the word “taxes” appears with no further elaboration. No other language appears about estate taxes. The guardian ad litem argues that decedent apparently wanted to divide her estate equally between her daughters and her grandchildren. *1030 This would be accomplished by apportionment. If taxes were charged to the residuary estate, there would be no such equal division.
In reviewing the decisions made under EPTL 2-1.8 and its predecessor, this court concludes that the language is not “a clear and unambiguous direction ’ ’ to require the burden of estate taxes to be paid by the residuary estate. Therefore, estate taxes shall be apportioned pursuant to EPTL 2-1.8.
The next question concerns the amount of commissions. After reducing the principal and increments by the amount of specific bequests, the account indicates that $102,988.88 is subject to commissions. Based on this figure, a claim is made for three full commissions.
At the time of her death, decedent was indebted to First-City National Bank, the corporate fiduciary, in the amount of $4,400 on a collateral note. If this note must be subtracted from the figure of $102,988.88, the balance remaining of $98,588.88 will require the payment of one single commission to the three fiduciaries rather than three commissions because the principal involved would then be less than $100,000.
In her lifetime decedent had an investment management account in the First-City National Bank of Binghamton, N. Y., the corporate executor. This included cash of $909.76 and securities (which did not include the IBM stock) valued at $72,028.77 at the time of her death. The $4,400 was evidenced by two notes, both on the same form furnished by the bank. The notes are collateral notes which state in the space for collateral security, “ Trust Assignment.” Additionally, decedent executed an assignment to the bank of the assets of her investment management account as collateral for any notes which she then had or might have in the future. After her death, the executors, to stop the payment of further interest, obtained an order from this court, pursuant to SCPA 1805 (subd. 2), to pay the obligation.
The guardian ad litem argues that only one commission is payable, citing Matter of Mattis (55 Misc 2d 511 [1967]). The fiduciaries seeking three full commissions argue that the facts of Matter of Mattis (55 Misc 2d 511, supra) are distinguishable from the facts herein.
It is true that the specific facts in Matter of Mattis (55 Misc 2d 511, supra) differ from this case. However, it is the principle involved which must be considered and that principle remains the same. Basically, as this court views it, the principle is that property subject to a lien is not effectively received by a fiduciary. Although the mechanical procedures *1031 in satisfying the lien may require some technical receipt of the property by a fiduciary in the nature of a conduit, the realistic viewpoint has to be that this property never constituted part of the decedent’s estate.
It is unnecessary to discuss the legislative history (SOPA 2307, subd. 5) of multiple commissions, because Mr. Surrogate Silvermak has carefully done so in Matter of Mattis (55 Misc 2d 511, supra). Any time a policy is made as in the case of commissions to allow multiple commissions when principal exceeds a certain figure, hardships can exist when an estate is just under or just over that figure, whatever it is. This case points up the possible burden imposed upon residuary beneficiaries (infants in this case) if the estate barely exceeds $100,000. For example, here, with one commission, the fiduciaries would be entitled to $3,575.61 on the principal of $98,588.88, but would be entitled to $11,188.83 commissions on the principal of $102,988.88, when it was in excess of $100,000.
The fiduciaries also argue that the commercial department of the bank never had actual custody of the securities. The internal management of the bank is not a concern of the court. The fact remains that decedent assigned her investment management account as collateral security for these loans. Even if it was the bank’s policy to retain the securities in the trust department, it was still the same bank and does not change the nature of the transaction.
The court determines that a single commission shall be allowed to the fiduciaries.
The objection of the guardian ad litem to the payment of the notes in the proceeding under SOPA 1805 (subd. 2) is dismissed, since sufficient evidence was submitted at the time of the hearing to sustain payment of the loan.