John D. Bennett, J.
The executors have instituted this construction proceeding, prior to the filing of Federal and New York estate tax returns, to determine the effect of a tax exoneration clause, paragraph second, and request a reformation or interpretation of paragraph eleventh, which creates a pre-1969 residuary, multiple, split-income, charitable remainder trust so as to qualify it for a charitable deduction under section 2055 of title 26 of the United States Code, as amended by the 1969 Tax Reform Act (TRA) (83 U.S. Stat. 487 et seq.).
Testator died on September 9, 1973, age 92, leaving a daughter, age 64, as his sole distributee, and a granddaughter and three great-grandsons. His will, executed on December 19, *27 1967 was admitted to probate and letters testamentary issued to petitioners on October 1,1973.
Paragraph second of the will provides: "I direct that all my funeral, administration expenses, just debts, and all estate and inheritance or succession taxes (without apportionment) be paid as soon after my death as may be practicable.”
After several outright and in trust cash bequests to his daughter, granddaughter, great-grandsons and friends, totaling $38,050, testator gave his residuary estate to his trustees in trust as follows:
"Eleventh * * * (a) To have and hold and to invest and reinvest the same and to collect the rents, dividends, interest and income thereof during the lifetime of my daughter, mary f. simms, if she survives me, and after paying all the proper charges thereon, to pay in quarter-annual instalments from the income earned, and so much of the principal as may be necessary, the sum of eight thousand ($8,000.00) dollars per annum to my daughter, mary f. simms. The balance of such annual income remaining after providing for the aforesaid payments to my daughter shall be paid semi-annually as follows:
"1. One-eighth part thereof shall be paid to my granddaughter, charlotte downey, or, if she shall predecease me or shall die before the termination of the trust as hereinafter provided then to her issue who shall be living on the semiannual distribution date of said part of the income in equal shares per stirpes.
"2. One-eighth part thereof to the son of Isabel Campbell or, if he shall predecease me or die before termination of the trust as hereinafter provided, to his issue who shall be living on the semi-annual distribution date of said part of the income, in equal shares per stirpes.
"3. Two one-eighth parts thereof to the issue of rose Walter who shall be living on the semi-annual distribution date of said parts of the income in equal shares per stirpes.
"4. Two one-eighth parts thereof to the little sisters of the poor of Baltimore, Maryland.
"5. One-eighth part thereof to the society for the protection OF DESTITUTE ROMAN CATHOLIC CHILDREN of the City of Buffalo, New York.
"6. One-eighth part thereof to father Flanagan’s boys home, Boystown, Nebraska.
*28 "The income of any part which shall remain undisposed because of the death prior to the termination of the trust of the persons hereinabove named to receive the same shall be distributed ratably among the beneficiaries of the remaining parts in the proportion that their respective income interests bear to the aggregate of the income interests of all the remaining parts.”
Upon the death of the testator’s daughter the trust remainder is payable in the same proportions as the excess income.
Though the petition does not set forth the assets comprising the testator’s estate, petitioners’ attorney has informed the court that the assets and deductions for estate tax purposes are as follows:
Real property..................... $ 164,170
Stocks and bonds.................. 1,170
Cash in banks..................... 41,390
Insurance payable to designated beneficiaries
(daughter & granddaughter)...... 26,370
Personal effects................... 2,800
Inter vivos trust payable to executors..................... 790,600
Total $1,026,500
Funeral, administration expenses and debts.............. 116,000
The residuary probate estate, after deducting the preresiduary outright and in trust bequests, but before estate taxes, is $845,580. Petitioners allege that the loss of the charitable deduction because the trust is not a charitable annuity trust under TRA would increase the estate tax by $163,000. It should be noted that prior to December 31, 1969, the estate would be entitled to a charitable deduction, since the amounts payable to the charities could be readily determined.
Before proceeding with the construction of paragraphs second and eleventh of the will, the court is called upon to determine a question of jurisdiction, which appears to be of first impression.
JURISDICTION
Petitioners named and cited as interested parties, in addition to the charitable and noncharitable residuary legatees, the Attorney-General of the State of New York (AG), the *29 United States Treasury Department — Internal Revenue Service (IRS), and the New York State Tax Commission (Commission). With the exception of the IRS all of the cited parties have duly filed notices of appearances.
Decedent’s daughter Mary Simms denies any consent to acceleration of the charities’ remainder interests and filed an answer opposing the relief requested by the petition.
Both the United States Department of Justice and the United States Attorney for the Eastern District filed written objections to the IRS being made a party. They contend that IRS is not a legal entity which can be sued; that if the real party in interest is the United States, it has not waived its sovereign immunity. Because of the opposition of the United States, the IRS cannot be deemed a party (Commissioner v Estate of Bosch, 387 US 456).
As a result of the answer, court personnel have had several conferences with the attorneys for all of the parties in an attempt to dispose of the issues amicably. The Commission’s attorney participated in such conferences. While the petitioners and all the residuary legatees have filed memoranda of law in support of their respective positions, neither the attorney for the Commission nor AG has submitted memoranda of law. Following the submission of the proceeding for decision, the Commission moved for an order dismissing the proceeding as to it, or in the alternative, dropping it as a party.
In his supporting affidavit the attorney for the Commission alleges that the allowance of the charitable deduction is a matter for the IRS, which determination, under article 26 of the Tax Law, is binding upon the Commission in the absence of fraud or palpable error. Since the IRS is not a party to this proceeding and in any event would not be bound by any determination of this court under Commissioner v Estate of Bosch (supra), the Commission contends that it should not be bound by this court’s determination, but only by the determination of the IRS.
As to the tax exoneration clause, the Commission admits that under SCPA 1420 (subd 4) all parties to the proceeding are bound by the decree of a court unless modified or reversed on appeal. Nevertheless, the Commission argues that an interpretion of the exoneration clause can affect the extent of the charitable deduction, if any, for estate tax purposes, which would not be binding upon the IRS under Bosch (supra), and likewise would not be binding upon the Commission.
*30 No claim is made that the Commission is not a proper party to this proceeding, nor that the appearance by its attorney was in any way unauthorized or improper. Research by the court fails to reveal any reported case in which the Commission has sought relief similar to that requested here.
In Matter of Stalp (79 Misc 2d 412), a recent case involving a will construction under TRA similar to the instant case, the court has been advised that the Commission was cited, appeared but did not file a brief or otherwise participate in the proceeding. Discussing the problems resulting from the judicial construction of the will under TRA and the estate tax implications of his determination, Surrogate Sobel said (p 419): "In the light of local law, as discussed earlier in this decision, and without regard to present or future transitional provisions, this court is satisfied that the Treasury will accept the ruling of this court directing minor reformation of the trust in issue. The section 664 regulations do not require a ruling of the State’s highest court in such circumstances. (See, generally, Revenue Procedure 72-2, superseded by Revenue Procedure 73-8; cf. Commissioner v Estate of Bosch, 387 US 456.)”
The TRA as originally enacted provided for a saving or transitional period (Internal Revenue Code, § 664, subd [g], par [4], cl [B], subcls [i], [ii], [iii]; Int. Rev. Reg., § 1.664-1, subd [g], par [1], els [i], [ii], [iii]) which is inapplicable to testator, who, petitioners allege, at all times was under no mental disability. In his learned analysis of the TRA as it affects charitable trusts under both the old and new law, Surrogate Sobel in the Stalp case (supra), called attention to the need for statutory relief by Congress. Prophetically, on October 26, 1974, Congress amended subdivision (e) of section 2055 of the IRC by the addition of paragraph (3) (Public Law 93-483, 93 Congress, H.R. 12035) effective as to the estates of decedents dying after December 31, 1969.
This amendment permits estates of decedents dying after December 31, 1969, with wills executed prior to September 30, 1974, creating old law charitable remainder trusts which do not qualify as a charitable remainder annuity or unitrust, to qualify for a charitable deduction, in the following language: "if the governing instrument is amended or conformed on or before December 31, 1975, or, if later, on or before the 30th day after the date on which judicial proceedings begun on or before December 31, 1975 (which are required to amend or *31 conform the governing instrument), become final, so that the interest is in a trust which is a charitable remainder annuity trust, or a charitable remainder unitrust (described in section 664), or a pooled income fund (described in section 642(c)(5)), a deduction shall nevertheless be allowed.”
In the case of wills of decedents which come within the purview of the 1974 amendment to section 2055 of the Internal Revenue Code, it is obvious that they can only be amended or conformed by a local court such as this court. Any other interpretation of the new transitional amendment would render it meaningless. This has been the interpretation given by the courts to the original saving provisions contained in the TRA and the administrative provisions in section 1.664 of the Internal Revenue Regulations (26 CFR Part 1) (Matter of Barkey, 65 Misc 2d 738; Matter of Klosk, 65 Misc 2d 1005; Matter of Roche, 69 Misc 2d 481; Matter of Bird, 69 Misc 2d 1015; Matter of Pearlbrook, Surrogate’s Court, New York County, N.Y.L.J., Aug. 9, 1972, p 11, col. 3). The Legislature enacted EPTL 8-1.8 which the Practice Commentary in McKinney’s indicates was passed to conform New York law with the restrictions imposed upon charitable trusts by the TRA (McKinney’s Cons Laws of N.Y., Book 17B, EPTL, 1974-1975 Pocket Part, § 8-1.8, p 94; (see, also, Shriner’s Hosp. for Crippled Children v Maryland Nat. Bank, 270 Md. 564).
All of the above-cited cases involved post-TRA executed wills. The courts have uniformly permitted a construction or reformation of wills to enable estates to claim a charitable deduction pursuant to section 2055 of the IRC as amended by the Tax Reform Act of 1969 (see comment on Matter of Barkey, 65 Misc 2d 738, supra; 2 CCH Fed. Estate and Gift Tax Reporter, ¶ 8022).
An appearance once served can only be withdrawn with the permission of the court (4 Carmody-Wait 2d, New York Practice, § 26:52). Accordingly, in light of the 1974 amendment to section 2055 of the Internal Revenue Code and in the exercise of its discretion, the motion of the State Tax Commission to dismiss the proceeding as to it, or in the alternative, to withdraw its appearance, is denied.
TAX EXONERATION
Testator, by grouping the payment of taxes with the payment of debts, funeral and administration expenses in paragraph second, indicated an intent to pay estate taxes on the *32 gifts passing under his will as an expense of administration (Matter of Leonard, 9 AD2d 1; Matter of Wheeler, 25 Misc 2d 933, 938, affd. 14 AD2d 549, mot. for lv. to app. den. 14 AD2d 692, 10 NY2d 709; Matter of Robords, 69 Misc 2d 1026; Matter of Tropp, 67 Misc 2d 819; Matter of Bauer, 54 Misc 2d 1060, 1064, rearg. den. 55 Misc 2d 808; Matter of Moritz, 48 Misc 2d 323).
Absent a clearly expressed intent by testator that nontestamentary gifts are exonerated from the payment of estate taxes, they must bear their apportioned share of such taxes (Matter of Leonard, 9 AD2d 1, supra, and cases cited).
Accordingly, pursuant to the provisions of EPTL 2-1.8, estate taxes will be apportioned against nontestamentary gifts and the taxes attributable to gifts passing under the will are to be paid as an expense of administration to be deducted before division of the residuary estate.
CHARITABLE ANNUITY TRUST
Lastly, the court is called upon to determine testator’s intent with regard to paragraph eleventh of his will so that, if it is at all possible, the estate will be entitled to a deduction for the gifts to charity.
That testator intended to benefit the three charitable remaindermen named in his will is obvious. As Surrogate Sobel stated in Matter of Stalp (79 Misc 2d 412, 416-417, supra): "This court finds that Miss Stalp’s honest and straightforward charitable motive — one devoid of any purpose of tax avoidance —has been frustrated by an unintended 'mistake’ in will draftsmanship, justifying the court in allowing reformation of article thirty-second of her will by minor judicial surgery as hereinafter directed.”
The sum of $8,000 which decedent directed to be paid in quarterly installments to his daughter for life, first from income and "so much of the principal as may be necessary” created an annuity (Matter of Fischer, 307 NY 149, 156; Matter of Ferris, 3 NY2d 70, 77).
The court has computed the present value of the annuity, based upon a female age 64, as of the date of the decedent’s death, to be $79,318.42 (Table A(2), 1 CCH Estate and Gift Tax Reporter, par. 1217, Reg. § 20.2031-10, subd [f]). After inquiry, the court has been informed that petitioners can purchase a similar commercial annuity from an insurance company for *33 $86,811.93 without any refund, and with a refund feature for $91,463.40. Under the 1974 amendment to the TRA, the court will amend or conform the decedent’s will by the use of the doctrine of segregation as did Surrogate Sobel in the Stalp case (supra), so that the indefeasibly vested income and principal payable to the charities qualifies as a deduction under section 2055 of the Internal Revenue Code (see, also, Matter of Larus, 78 Misc 2d 122).
Rather than create six separate trusts as requested by petitioners in their brief and accelerate payment of one half of the residue to the charities, which is opposed by decedent’s daughter, the court will create four separate trusts as set forth below.
The residuary estate will be ascertained after deducting from the gross probate estate, debts, funeral, administration expenses, estate taxes (after apportioning the taxes attributable to the nontestamentary gifts), and the cash bequests, both outright and in trust pursuant to paragraphs third through tenth inclusive, from which a charitable annuity remainder trust of $80,000 will be created. Pursuant to EPTL 8-1.8 this trust will be held by the trustees pursuant to all the income and estate provisions of the Internal Revenue Code and regulations relating to charitable annuity trusts from which an annuity of $4,000 per annum (5% of the principal), will be paid in quarterly installments, first from income and then from principal, to the decedent’s daughter for life. The annual excess income, if any, and principal upon death, to be paid to the three designated charities in accordance with the proportions designated in paragraph eleventh (a) 4, 5 and 6 of the decedent’s will (% to the Little Sisters of the Poor of Baltimore, Maryland; Vs to the Society for the Protection of Destitute Roman Catholic Children of the City of Buffalo, New York; and Vs to Father Flanagan’s Boys Home, Boystown, Nebraska).
A second private noncharitable remainder trust fund of $80,000 is to be created to be held by the trustees, from which an annuity of $4,000 per annum (5% of the principal), in quarterly installments, is to be paid to the decedent’s daughter for life, first from income and then from principal, excess annual income and the principal upon her death to be paid to the persons designated in the proportions set forth in paragraph eleventh (a) 1, 2 and 3 of the provisions of the decedent’s will.
*34 The balance of the residuary estate after the funding of the two $80,000 trust funds to be divided into two equal trusts both to be held during the life of the decedent’s daughter, one for the benefit of the charitable remaindermen and the other for the other noncharitable remaindermen pursuant to the provisions of subparagraph (b) 1, 2, 3, 4, 5 and 6 of paragraph eleventh of the decedent’s will. The charitable trust in accordance with the provisions of EPTL 8-1.8 shall be held by the trustees subject to all of the income and estate tax provisions of the IRC and regulations relating to charitable foundations.
Since the noncharitable income and remainder interests are not indefeasibly vested, the court cannot commute the annuity payable to the decedent’s daughter without affecting the rights of the noncharitable remaindermen who can only be ascertained upon the death of the annuitant (Matter of Ferris, 3 NY2d 70, 76-77, supra).
The aggregate value of the charitable annuity and noncharitable trusts ($160,000) will fully assure the payment of the $8,000 annuity payable to the decedent’s daughter during her life.