John D. Bennett, S.
Following the audit of the Federal estate tax return the Internal Revenue Service disallowed the charitable deduction claimed by the executor for the old-law charitable remainder trust created by decedent’s will. This resulted in a Federal estate tax deficiency of $56,414.80. The trustees, in an effort to save the estate the additional Federal estate tax resulting from the denial of the charitable deduction as well as the increase in New York estate tax which would result, filed on October 9, 1975 a petition for the construction or reformation of the will so as to create a 7½% charitable remainder unitrust for the benefit of the decedent’s widow, to enable them to claim a charitable deduction pursuant to section 2055 (subd [e], par [2], cl [A]) of the Internal Revenue Code (US Code, tit 26, § 2055, subd [e], par [2], cl [A]) as amended by the Tax Reform Act of 1969 (TRA) (83 US Stat 487 et seq.). It should be noted that though the court’s decision will be rendered in 1976, under the extension of the transitional period enacted by Public Law 93-483 (— US Stat —), effective as to estates of decedents dying after December 31, 1969, this proceeding was timely instituted since it was filed prior to December 31, 1975 as required by law (Matter of Wegefarth, NYLJ, Feb 20, 1976, p 11, col 4.)
Testator, a retired architect, died on June 19, 1972 at age 94 survived by his widow, Lena, age 90, and one son, Carl L. Jr., age 62, who are his sole distributees and named legatees under his will executed on July 10, 1969 and a codicil , thereto executed on June 16, 1972. Both instruments were admitted to probate on July 31, 1972 and letters testamentary granted to the named corporate executor and letters of trusteeship issued to the corporate fiduciary and his widow.
By article third of his will decedent gave one half of his residuary estate outright to his widow. The remaining half was given to his trustees to pay the net income to his wife for her life and upon her death to his son Carl. Upon Carl’s death the trustees were directed to pay the sum of $2,000 to a friend and the balance of the corpus to be paid to The Cathedral of *826 The Incarnation, Diocese of Long Island. The will further provided:
"Anything herein contained to the contrary notwithstanding, I hereby authorize and empower my trustees, and their successors, in their discretion from time to time to pay or apply to or for the use of my son carl l. otto jr. such portion or portions of the principal of the trust created hereunder for the benefit of my said son as in the sole judgment of my said trustees shall seem advisable. The provisions of this subdivision are intended primarily as a precaution against serious illness, misfortune or other emergency or unusual condition affecting my said son, and also as a means of affording financial assistance to my said son; but the foregoing enumeration is to serve only as a guide to my trustees and shall not be construed to restrict the unqualified discretion hereinabove conferred and the decision of my said trustees as to the advisability of any such payments shall be binding and conclusive upon all persons interested in the trust hereinabove created and shall not be subject to review.
"The power to invade the principal of the trust fund as provided in the above paragraph of my Will for the benefit of my son, Carl L. Otto, Jr., shall be exercised solely by the co-trustee, or trustees, other than my said son, and he shall not participate in the exercise of such power. In exercising the authority conferred upon my said co-trustee to invade principal for the benefit of my said son said trustee is to be guided by my desire that my son shall have sufficient income from all sources to maintain himself in the manner to which he is accustomed at the time of my death. If there shall be only one co-trustee in addition to my said son, then such co-trustee is empowered in his sole and absolute discretion to invade the principal for my son’s benefit. No trustee hereunder shall under any circumstances be held liable for the exercise or non-exercise of such discretion.”
Testator’s codicil gave specific instructions for his funeral, directed that the gift to The Cathedral of the Incarnation, Diocese of Long Island, be paid to the Cathedral to be added to and held by it as part of the Permanent Fund of the Friends of the Cathedral. Lastly, testator named a bank sole executor in place of his son and a friend and named the bank and his widow as cotrustees instead of his son and widow.
Carl L., Jr., postdeceased his father on November 9, 1974 without disclaiming or renouncing his interest in the trust. *827 The son’s death more than nine months after decedent’s death and the filing of the Federal estate tax return by the executor is not a disclaimer under Federal Estate Tax Regulation 20-2055-2(c)(2) (26 CFR 20.2055.2 [c] [2]) (Matter of Lowenstein, NYLJ, Jan 12, 1976, p 9, col 4).
In the memoranda of law filed by counsel for the church and the Attorney-General appearing on behalf of the People of the State of New York as the ultimate charitable remainder, each requests that there be segregated from the trust principal the $2,000 legacy payable to the noncharitable beneficiary as was done in Matter of Hammer (81 Misc 2d 25) and that the life income payable to the widow be reformed into a 7½ charitable remainder unitrust. Petitioners by their memorandum of law have completely disregarded the son’s secondary life interest in the trust as well as the right of the trustees to invade the trust principal for his benefit.
Most of the tax reformation cases heretofore decided involved trusts with income payable to noncharitable beneficiaries with the remainder payable to charity, which qualified for the charitable deduction prior to the TRA. The courts have transformed these pre-TRA trusts into charitable remainder annuity trusts and charitable remainder unitrusts. To the best of this court’s knowledge, none have been transformed into pooled income trusts. Only two reported cases involved an invasion of principal for the benefit of the life income beneficiary (Matter of Lowenstein, supra, and Matter of Kantor, NYLJ, Nov 7, 1975, p 6, col 6). In the Lowenstein case the life beneficiary’s death effected a disclaimer whereas in the Kan-tor case the life beneficiary, the widow, having adequate assets of her own, executed a renunciation of her right of invasion. By its very nature an annuity is an invasion of principal since it is payable first from interest and then from principal (Matter of Fischer, 307 NY 149, 159; Matter of Ferris, 3 NY2d 70, 77). From this it follows that every charitable remainder annuity, unitrust or pooled income trust under the Tax Reform Act of 1969 is an invasion of principal. The court may therefore fix an annuity for the son’s benefit taking into consideration the standard fixed in testator’s will.
Counsel for the charity and the Attorney-General, in an attempt to assist the court in fixing a charitable remainder unitrust for the benefit of the decedent’s son, have made many statements of a factual nature in their memoranda concerning the son’s mode of life in support of their contention that the *828 will as written contains a standard for the trustees’ invasion of principal which would qualify for a charitable remainder trust under the law prior to TRA (Merchants Bank v Commissioner, 320 US 256; Henslee v Union Planters Bank, 335 US 595; Ithaca Trust Co. v United States, 279 US 151. See Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax Law Rev 535 [1966]).
Statements by counsel are not evidence. Testator’s will indicates a charitable intent coupled with an intent to provide for the members of his family.
The Surrogate’s Courts in numerous cases have reformed wills to enable the testator’s wishes to be carried out thereby permitting testators and attorneys, who are unaware of the effects of the Tax Reform Act of 1969, to enable estates to claim a charitable deduction under section 2055 of the Internal Revenue Code as amended by the TRA (Matter of Hammer, 81 Misc 2d 25, supra). The only case to the contrary is Matter of Reinhardt (81 Misc 2d 184) where the Surrogate refused reformation inasmuch as the will indicated that the trustee’s primary concern was the welfare of the income beneficiaries and not with the impact of estate taxes upon the charitable bequest. (See, also, Matter of Larus, NYLJ, Jan. 16, 1976, p 8, col 3.)
To enable the court to fix a proper chargeable remainder trust for the benefit of Carl L. Jr., the parties are directed to appear for a hearing at this court on March 17, 1976 at 10:30 a. m., at which time they are to submit proof in support of their argument that the will fixed a standard of invasion for the benefit of testator’s son as of the date of decedent’s death. Events which transpired subsequent to the decedent’s death will not be taken into account (Ithaca Trust Co. v United States, 279 US 151, supra; Adams v United States, US Dist Ct, Dist Kan, Case #W4684, 7/23/75, reported in CCH Federal Estate and Gift Tax Rep ]f 13,093), where the court said (p 8867-67):
"The same Ithaca case is also noteworthy for re-emphasizing the principle that in determining the amount of the charitable remainder, the amount of the standard-of-living expense must be computed on the basis of the beneficiary’s life expectancy at the time of testator’s death, and not on an after-known factual basis occurring subsequent to the donor’s date of death. In Ithaca, the widow, as life tenant, died within a year after her husband’s death and before any estate tax had been *829 computed, and a contention was made and rejected that since it was absolutely known how much of the corpus she used or could have used, then that should be the basis for determining the remainder for charitable use for estate tax purposes.”
For the edification of counsel, their attention is called to the rules enunciated in the Ithaca case as set forth by the Adams case at pages 8867-68-69 (see, also, Taggart, 21 Tax Law Rev 535, 550, supra).
By way of illustration and not by limitation, counsel should be prepared to submit Carl L., Jr.’s, income tax returns for a period of at least three years prior to the decedent’s death, a statement of his assets and liabilities, the expenses for his maintenance and medical care, together with such other pertinent data that counsel feel will be helpful to the court.