John D. Bennett, J.
In this will construction proceeding to reform an old-law charitable remainder trust with two life income beneficiaries followed by a bequest to a noncharitable beneficiary to a 1Vi% unitrust thereby enabling the trustees to claim a charitable deduction under the Tax Reform Act of 1969 (83 US Stat 487 et seq.) the court rendered a decision dated February 24, 1976 (reported in 86 Misc 2d 824, wherein the facts are set forth at length). The Attorney-General and the charity both joined in petitioners’ application. Because all the interested parties disregarded the interest of the testator’s postdeceased son in the trust income and corpus, the court directed that a hearing be held to afford the parties an opportunity to substantiate their claim that the will fixed a standard for the trustees’ invasion of corpus for the benefit of the testator’s son thereby enabling the court to fix a charitable remainder unitrust for the benefit of testator’s widow and son which would qualify as a charitable deduction under the Tax Reform Act.
Because petitioners’ witnesses refused to travel to New York *673 from the State of Washington to testify, an order dated June 4, 1976 was made directing that an open commission be taken in Bellingham, Washington, near where the son resided from 1950 until his death in 1974. A further hearing was held before a law assistant-referee who rendered his report dated December 30, 1976, which was confirmed as of course on January 12, 1977.
The referee reported that testator’s son was entitled to receive the trust income upon the death of testator’s widow; that the trustees were restricted to an invasion of corpus for his benefit when the son was the income beneficiary and only in the event that the son’s income was insufficient to maintain him "in the manner to which he is accustomed at the time of my death.” In making their determination to invade principal, the trustees were not required to take into account the son’s assets.
The proof submitted at the open commission and the hearing before the referee indicated that testator’s son Carl was stricken with amyotrophie lateral sclerosis (ALS) in 1966; that some time prior to the decedent’s death Carl received a cash legacy of $100,000 from an uncle. He deposited the money in savings banks. The interest income derived from the bequest and his other income were sufficient for Carl’s living and medical expenses, which were very modest. If there were added to Carl’s income that of the trust, when he became entitled thereto, the combined income would be more than adequate for Carl’s needs as was established by the witnesses. Because of the fatal nature of ALS, Carl’s life expectancy was fixed at 10 years from 1966, the date of first diagnosis, or two years from the date of the decedent’s death in 1972, rather than the life expectancy reflected in standard mortality tables. Such tables are evidentiary only, bowing to proven facts (Matter of Denbigh, 7 TC 387; Matter of Jennings, 10 TC 323; Matter of Butler, 18 TC 914; Matter of Cushing, 49 Misc 2d 454 [citing Hall v United States, 353 F2d 500]).
It should be noted that the standard fixed by testator for the trustees’ invasion of corpus for the benefit of his son would qualify the bequest to charity as a charitable deduction under the law prior to the enactment of the Tax Reform Act (Merchants Bank v Commissioner, 320 US 256; Henslee v Union Planters Bank, 335 US 595; Ithaca Trust Co. v United States, 279 US 151; Taggart, Charitable Deductions for Transfer of Remainder Interests Subject to Invasion, 21 Tax Law Rev 535 *674 [1966]; see Matter of Pichel, and cases cited therein, NYLJ, July 30, 1976, p 7, col 2).
To effectuate the testator’s expressed charitable intent article third of testator’s will is therefore reformed as follows: First, there is to be segregated from the trust corpus the sum of $2,000, the income from which is to be paid to the testator’s widow for her life and upon her death the corpus is to be paid to the noncharitable beneficiary (Matter of Hammer, 81 Misc 2d 25). The remaining trust corpus is reformed to create a charitable remainder unitrust of the type authorized in section 664 (subd [d], par [3]) of the Internal Revenue Code. The trustees are to pay to testator’s widow in each taxable year of the unitrust, during her life, an amount equal to the lesser of (a) the trust income for such taxable years as defined in section 643 of the Internal Revenue Code of 1954 or (b) 5% of the net fair market value of the trust assets in each year (Matter of Maher, NYLJ, Feb. 11, 1977, p 6, col 3).
Since the testator’s son predeceased testator’s widow, the primary beneficiary, and his life expectancy is less than hers based upon his death, his interest in the unitrust is, in effect, nullified.